UNITED STATES of America,
Plaintiff-Appellee,

v.

Paul A. DUDLEY and Nancy J. Dudley,
Defendants-Appellants.

No. 77–5102.

United States Court of Appeals,
Fifth Circuit.

Oct. 13, 1978.

Bernard H. Dempsey, Jr., Tampa, Fla., John M. Bray, Washington, D. C., for defendants-appellants.

John L. Briggs, U. S. Atty., Jacksonville, Fla., W. Christian Hoyer, Asst. U. S. Atty., Tampa, Fla., for plaintiff-appellee.

Before GEWIN, GODBOLD and MORGAN, Circuit Judges.

GODBOLD, Circuit Judge:

This case requires us to interpret 18 U.S.C. § 1623(a), which makes criminal various types of activity before a court or grand jury:

> Whoever under oath . . . in any proceeding before or ancillary to any

court or grand jury of the United States knowingly makes any false material declaration or makes or uses any other information, including any book, paper, document, record, recording, or other material, knowing the same to contain any false material declaration . . . .

The Fifth Circuit has often reviewed convictions under the false declarations provision of § 1623(a). Here we are presented with a matter of first impression in this circuit, the meaning and application of the provision concerning use of books, documents (etc.) knowing the same to be false.[1]

Paul and Nancy Dudley owned and operated a large home health care organization in Florida, Gulf Coast Home Health Services, Inc. Gulf Coast is a nonprofit corporation which markets health care in the patients' homes, providing doctors, nurses, physical therapists, speech pathologists and a variety of other services as ordered by private physicians. The cost of its services are paid for with the patients' Medicare benefits, and all of the corporation's expenses including the salaries paid to the Dudleys are reimbursed by Medicare. The Dudleys also served as consultants for home care agencies other than Gulf Coast, an activity supposedly separate from their activity on behalf of Gulf Coast.

During 1976 a federal grand jury was investigating the home health care industry in Florida. Both Paul and Nancy Dudley were subpoenaed to testify and did testify. Mr. Dudley brought numerous records in response to a subpoena duces tecum, including purported copies of contracts under which the Dudleys would serve as consultants for agencies other than Gulf Coast. The grand jury returned an eleven-count indictment against the Dudleys and a business associate, Enrique Calimano. Calimano's case was severed, and he was convicted of making a false material statement to the grand jury. His conviction was affirmed, *U. S. v. Calimano*, 576 F.2d 637 (C.A.5, 1978).

All counts relating to the Dudleys were dismissed except Renumbered Counts I through V. Count I (originally Count Five) charged that Paul and Nancy Dudley

being under oath in a proceeding before the Grand Jury of the United States of America, knowingly used a record, to-wit: the Minutes of the Meetings of the Board of Directors of Gulf Coast Home Health Services, Inc., knowing the same to contain false material declarations in that many of the Minutes were not made and executed on the date shown, but rather were made and executed at a later time and then back-dated to mislead the Grand Jury in its investigation of matters purportedly discussed and recorded in the back-dated Minutes in violation of Title 18, United States Code, Sections 1623 and 2.

Count II (originally Count Six) charged that Paul Dudley made false material declarations to the grand jury relating to corporate minutes of Gulf Coast purportedly prepared at a substantially later date and backdated. Paul testified that each minute reflected transactions occurring on the date of the minute, that each minute was prepared on or about the date shown, and that minutes were not backdated. He was found guilty.

Count III (originally Count Eight) charged that Paul and Nancy:

being under oath in a proceeding before the Grand Jury of the United States of America, knowingly used a document, to-wit: an alleged Consulting Agreement between Paul and Nancy Dudley and Tampa Gulf Coast Home Health Services, Inc. [attached hereto, and incorporated by reference herein, as Exhibit No. 2], knowing the same to contain a false, material declaration, to-wit: that the contract was executed on the date shown, that is, July 4, 1974, all in violation of Title 18, United States Code, Sections 1623 and 2.

Both Paul and Nancy were convicted.

Count IV charged that Nancy made a false material declaration in testifying that

---

1. We find only one appellate opinion which has considered the use of false documents provision. *See U. S. v. Pommerening*, 500 F.2d 92

(C.A.10), cert. denied, 419 U.S. 1088, 95 S.Ct. 678, 42 L.Ed.2d 680 (1974).

consulting agreements, the terms of which were material, were signed by her on July 4, 1974, when in truth she did not sign the consulting agreement with Calimano on that date. She was acquitted by the jury on this Count.

Count V (originally Count Eleven), against only Paul, is substantially the same as Count IV, against only Nancy. The court granted Paul's motion for judgment of acquittal on Count V.

Thus the convictions before us for review are these:

Paul: Count I (knowing use of a false record, the backdated minutes), Count II (false declaration concerning the backdated minutes) and Count III (knowing use of a false record, the falsely dated Calimano contract).

Nancy: Count III (knowing use of a false record, the falsely dated Calimano contract).

A. Count II—Paul Dudley—False declaration concerning the corporate minutes.

 The elements of the § 1623(a) offense of false statement are well settled. To constitute perjury the statement must be false, material and made with knowledge of its falsity. *See, e. g., U. S. v. Slawik*, 548 F.2d 75 (C.A.3, 1977). A statement literally true constitutes no offense, and similarly, a false answer, if immaterial, is also inoffensive. *Id.*

The indictment recites that Dudley's statements regarding backdating of minutes were material "to determine whether some of the costs incurred by Gulf Coast Home Health Services, Inc., had been authorized by the Board of Directors." The grand jury foreman testified at trial that the panel was interested in the minute book to make sure that the Agency had acted in accordance with the directions of the Board of Directors. In particular, the September 16, 1974 minute named in the indictment recorded an authorization of four weeks vacation for directors. The government proved by analysis of the paper on which the minute was typed that the minute could not have existed before 1975.

 Dudley's statements concerning the September 16, 1974 minute were both material and false. One of the issues on which the grand jury investigation focused was whether the Dudleys had falsified vacation records. If the Dudleys were entitled to four weeks vacation as the corporate minute showed, extra payments made to them for vacation time authorized but not taken were not incorrect. If they were not entitled to four weeks vacation, the evidence tended to show that they had improperly received extra pay for vacation time actually taken. To be material a statement need only have the capability of influencing the grand jury's investigation. *U. S. v. Brumley*, 560 F.2d 1268 (C.A.5, 1977). Dudley's statement concerning the corporate minutes could have the tendency to defuse the grand jury's investigation insofar as it might relate to or reach wrongful compensation for vacation days actually taken.

 Because the district judge correctly found the statement material,[2] Dudley's conviction can be overturned only if there was insufficient evidence to conclude that Dudley knowingly made a false statement to the grand jury. Viewing the evidence most favorably to the government, a reasonable jury could conclude that Dudley knew that the minutes in question were backdated at least several months. Two auditors testified that audits performed during 1974 and 1975 revealed no September 16, 1974 minute regarding vacation policy in the minute book. Additionally, even employees of Gulf Coast did not know that the Dudleys purportedly were entitled to four weeks vacation until Paul Dudley mentioned it to his internal accountant in 1976 to explain away the seeming overpayment for vacation not taken. Therefore, we affirm the verdict finding Paul guilty under Count II. Since he received two-year concurrent sentences under Counts I, II and III, we need not examine the convictions under I and III.

2. Materiality is a question of law for the court. *U. S. v. Damato*, 554 F.2d 1371 (C.A.5, 1977).

B. Count III—Use by Nancy Dudley of the falsely dated Calimano contract.

By a contract dated July 4, 1974, the Dudleys agreed to provide consulting services to Calimano's home health care agency, Tampa Gulf Coast Home Health Services, Inc., formerly a branch office of the Dudleys' Gulf Coast. The United States Attorney had seen a true and correct copy of this contract before the Dudleys appeared before the grand jury. Responding to the subpoena duces tecum directed to him, Paul Dudley brought to the grand jury what purported to be a copy of the agreement with Calimano. Later it appeared that this document materially differed from the contract actually signed July 4, 1974; it stated that the consulting work to be done by the Dudleys for Calimano's company would be done after business hours and on weekends, and it imposed broader duties on the Dudleys than required by the actual contract. The purported contract was a backdated sham. Tests later conducted on the paper of the document revealed that the paper was not in existence until January 1975 although the document was dated July 4, 1974.

When Mrs. Dudley testified before the grand jury the prosecutor placed before her four purported consulting contracts, including the sham Calimano contract, and asked that she look them over. The following colloquy ensued:

Q And those are the contracts and you signed them on the dates indicated on the contract?

A To the best of my knowledge.

Q Okay. And are there are other consulting contracts that you have had or—

A No.

Q —do now have?

A No.

Q Or ever signed?

A No.

Q All right.

Some days after the Dudleys had testified but before return of the indictments their attorney turned over to the United States Attorney a true copy of the Calimano agreement.

Nancy Dudley was convicted of using the false Calimano contract before the grand jury. The contract clearly falls within the scope of 18 U.S.C. § 1623(a)'s language covering "any book, paper, document, record, recording, or other material." The critical question is whether Mrs. Dudley's grand jury testimony constituted a "use" of the document "knowing [it] to contain [a] false material declaration."

█ A criminal statute should be construed narrowly to criminalize only that conduct which Congress intended. *See U. S. v. Levy*, 533 F.2d 969 (C.A.5, 1976). Since there is no relevant legislative history on the meaning of use, we write on a clean slate. The outer parameters of "use" will not be easy to define under reasoned principles. But this case clearly is within the limits of "use." Mrs. Dudley argues that a false document cannot be "used" within the meaning of the statute unless the witness affirmatively presents it to the grand jury, explicitly adopts its veracity, and otherwise testimonially relies upon it. Clearly these actions would constitute use. *See U. S. v. Pommerening, supra*. Mrs. Dudley did not present the false document to the grand jury in the sense of physically bringing it. We hold that physical delivery by the alleged user is not a necessary prerequisite to use. When the document, falsely representing on its face to have been signed July 4, was shown to Mrs. Dudley she asserted testimonially that her actual conduct had been what the document represented it to have been; that is, she had signed it on July 4, 1974. Her assertion falsely described her own conduct and falsely authenticated the document as a true and correct exemplification of an actual event, signing of the document on July 4, 1974, which event in fact had not occurred. Her testimony tended to give verity to the document and also was a denial of her act of signing a backdated instrument differing from the true contract. Mrs. Dudley's testimony is analogous to that of a bookkeeper who, when presented with what purport to be

the books of the company and asked "Are the entries which you made in these books true and correct?" falsely answers "Yes." Mrs. Dudley's testimony was "use" of a document, knowing the same to contain a false material declaration.[3] Because of our conclusion concerning Mrs. Dudley's assertion as to date of execution we need not consider the effect of her subsequent assertions that there were no other consulting contracts and that she had signed no other.

▮ Mrs. Dudley's use was material. It had a natural effect or tendency to impede, influence or dissuade the grand jury from its investigation of alleged misuse of funds in the health care industry in Florida, by the Dudleys and their agency and other agencies as well. "The use of false statements to conceal an unlawful act is no less material than the use of false statements to carry out the act." *U. S. v. Jones,* 464 F.2d 1118 (C.A.8, 1972), *cert. denied,* 409 U.S. 1111, 93 S.Ct. 920, 34 L.Ed.2d 692 (1973). *See also U. S. v. Pommerening, supra.*

▮ Turning to intent, we hold that violation of the use provision of § 1623(a) is a specific intent crime. The use provision is closely analogous to 18 U.S.C. § 1001, which provides:

> Whoever, in any matter within the jurisdiction of any department or agency of the United States knowingly and willfully falsifies, conceals or covers up by any trick, scheme, or device a material fact, or makes any false, fictitious or fraudulent statements or representations, or makes or uses any false writing or document knowing the same to contain any false, fictitious or fraudulent statement or entry, shall be fined not more than $10,000 or imprisoned not more than five years, or both.

The "makes or uses" language of § 1001 requires that the defendant make the false statement for the purpose of influencing agency action. *See U. S. v. Carter,* 526 F.2d 1276 (C.A.5, 1976); *U. S. v. Lentz,* 524 F.2d 69 (C.A.5, 1975); *U. S. v. Beer,* 518 F.2d 168 (C.A.5, 1975); *U. S. v. Candella,* 487 F.2d 1223 (C.A.2, 1973), *cert. denied,* 415 U.S. 977, 94 S.Ct. 1563, 39 L.Ed.2d 872 (1974); *U. S. v. Markee,* 425 F.2d 1043 (C.A.9), *cert. denied,* 400 U.S. 847, 91 S.Ct. 93, 27 L.Ed.2d 84 (1970); *U. S. v. Valenti,* 207 F.2d 242 (C.A.3, 1953).

▮ The evidence sufficiently supports submission to the jury of Mrs. Dudley's intent to conceal or mislead the grand jury or to impede or dissuade its investigation. The sham contract tended to give validity to the Dudleys' engaging in consulting services while being paid to operate Gulf Coast, by stating that the services were to be performed after business hours and on weekends, and it tended to make the consulting services appear broader in scope than the services the Dudleys actually agreed to furnish.

C. Multiplicity and inconsistent verdicts.

▮ Defendants contend that Counts III and IV are multiplicitous since in this case using a false document and testifying falsely as to its authenticity are in fact only one crime.[4] While § 1623 clearly proscribes both false statements and the use of false documents, it is unclear whether Congress intended cumulative punishment where a single act may violate both proscriptions. Arguably the two aspects are merged into one crime, much as the crimes of bank robbery and receiving stolen money may be merged and hence not cumulatively punishable. *See Milanovich v. U. S.,* 365 U.S. 551, 81 S.Ct. 728, 5 L.Ed.2d 773 (1961); *Heflin v.*

---

**3.** This is a clearer case than mere identification of what a document is, unrelated to the veracity of its contents, as, hypothetically, where a firm's bookkeeper is asked, "Are these the books of the company?" and he answers affirmatively knowing that they are the books but that they contain false entries. He would be correctly describing the documents but withholding the truth respecting their correct-

ness. Whether this would be a "use" is for another case and another day.

**4.** The testimony of Nancy Dudley set out fully in Count IV and alleged to be a false material declaration is the same testimony, quoted above in text, which the government introduced in support of Count III, the use of false document count.

*U. S.*, 358 U.S. 415, 79 S.Ct. 451, 3 L.Ed.2d 407 (1959). But we need not reach this issue of statutory construction since neither appellant has been punished cumulatively for false statements and use of false documents. Even if the indictment was multiplicitous, a conviction obtained pursuant to it does not have to be reversed, since an indictment may charge a single crime in a variety of forms to avoid a fatal variance of the evidence. *U. S. v. Universal C.I.T. Credit Corp.*, 344 U.S. 218, 225, 73 S.Ct. 227, 231, 97 L.Ed. 260, 266 (1952). Where multiplicitous indictments result in cumulative sentences, the appropriate remedy is to remand the case for dismissal of one count. If a defendant receives only one sentence, or concurrent sentences, there is no reason to upset the disposition of the trial court. *Compare U. S. v. Chrane*, 529 F.2d 1236 (C.A.5, 1976) *with U. S. v. Radue*, 486 F.2d 220 (C.A.5, 1973), *cert. denied*, 416 U.S. 908, 94 S.Ct. 1615, 40 L.Ed.2d 113 (1974).

■ Also, there is no merit to Nancy's contention that her conviction on Count III for use of a false document must be reversed since it is inconsistent with her acquittal on Count IV, charging a material false statement concerning the same document. Juries are free to render verdicts that are inconsistent or the result of compromise. *U. S. v. Kohlmann*, 491 F.2d 1250 (C.A.5, 1974); *U. S. v. Dotterweich*, 320 U.S. 277, 64 S.Ct. 134, 88 L.Ed. 48 (1943). We need not consider the somewhat different question presented by Paul Dudley (whose acquittal on Count IV was by the trial judge, not the jury), since he was sentenced concurrently on Counts I, II and III.

The convictions are AFFIRMED.