**UNITED STATES of America, Plaintiff,**

v.

**John G. GELLENE, Defendant.**

No. 97–CR–221.

United States District Court,
E.D. Wisconsin.

April 3, 1998.

Steven M. Biskupic, Joseph R. Wall, Milwaukee, WI, for Plaintiff.

Mark L. Rotert, Jeffrey E. Crane, Chicago, IL, Pamela Pepper, Milwaukee, WI, for defendant.

**ORDER**

STADTMUELLER, Chief Judge.

On December 9, 1997, a federal grand jury sitting in the Eastern District of Wisconsin returned a three-count indictment charging John G. Gellene with knowingly and fraudulently making false material declarations under penalty of perjury in violation of 18 U.S.C. § 152 (Counts One and Two) and using a document while under oath knowing that it contained a false material declaration in violation of 18 U.S.C. § 1623 (Count Three). On December 12, 1997, Gellene was arraigned before United States Magistrate Judge Aaron E. Goodstein and pled not guilty.

A jury trial commenced in this court on February 23, 1998, and on March 3, 1998, the jury found Gellene guilty on all three counts of the indictment. Gellene now moves the court to enter a judgment of acquittal pursuant to Fed.R.Crim.P. 29(c), or in the alternative, to grant him a new trial pursuant to Fed.R.Crim.P. 33.

Rule 29(c) provides that a defendant may move for a judgment of acquittal after a jury has returned a verdict of guilty. The "nearly insurmountable hurdle" provided by Rule 29(c) requires this court to "consider the evidence in the light most favorable to the Government, defer to the credibility determinations of the jury, and overturn a verdict '[o]nly when the record contains no evidence, regardless of how it is weighed, from which the jury could find guilt beyond a reasonable doubt.'" *United States v. Hickok,* 77 F.3d 992, 1002 (7th Cir.) (citations omitted), *cert. denied,* 517 U.S. 1200, 116 S.Ct. 1701, 134 L.Ed.2d 800 (1996).

Rule 33 provides that the court may grant a new trial to a defendant "if required in the interest of justice." The remedy of a new trial "is warranted 'only where there would be a miscarriage of justice' or 'where the evidence preponderates heavily against the verdict,'" and the decision to grant or deny a new trial "'is committed to the sound discretion of the district court.'" *United States v. Andrade,* 94 F.3d 9, 14 (1st Cir.1996) (citations omitted).

Gellene's counsel makes sixteen mostly cursory arguments that Gellene deserves a new trial, to which the government responds point by point. The court will address each argument in turn, giving each no more consideration than is warranted by the amount of effort expended by the defendant in making such arguments.[1]

1. Despite having the entire trial transcript at his disposal, Gellene did not bother to cite to the record once in his motion, nor did he cite a single case in support of his arguments. Moreover, his submissions failed to comply with Local Rule 6.01(a) (E.D.Wis.), which requires that every motion must be filed with a supporting brief or a certificate of counsel stating that no brief will be filed. Although the court is tempted to "deny the motion as a matter of course," as authorized by Local Rule 6.01(a), *see United States v. Lu,* Cr. No. 91–119–01–02, 1992 WL 174756, at *1 n. 1 (E.D.Pa. July 22, 1992) (judge tempted to dismiss motion for new trial which violated local rule requiring such motions to be supported by memoranda), the court will address Gellene's arguments but notes that "[d]istrict judges are not archaeologists," *Northwestern Nat'l Ins. Co. v. Baltes,* 15 F.3d 660, 662 (7th Cir.1994) (Easterbrook, J.), and it is not the duty of the court to "scour the record" for facts supporting Gellene's contentions. *Cf. Brasic v. Heinemann's Inc.,* 121 F.3d 281, 285 (7th Cir. 1997).

Gellene first "reasserts the arguments made at the close of the government's case-in-chief, at the conclusion of the evidence, and after the jury returned its verdict." Defendant's Post–Trial Motion at 1. The court appreciates that this blanket assertion is intended merely to preserve the record for appeal. To the extent that it seeks a further determination from this court, the court holds that this argument does not entitle Gellene to a judgment of acquittal or a new trial.

Gellene's second argument is that there was no direct evidence presented at trial that he intended to deceive and that the circumstantial evidence presented was insufficient to enable a reasonable juror to conclude beyond a reasonable doubt that Gellene possessed a specific intent to deceive. Defendant's Post–Trial Motion at 2. As the court told Gellene after the verdict was read, it "is going to be pretty much of an uphill travel to convince the court that the jury did not in this case do the right thing." Trial Transcript at 1476. Gellene's conclusory, unsupported assertion that the jury did not do the right thing is inadequate to warrant a judgment of acquittal or a new trial, especially in the face of the government's voluminous citations to the evidence of Gellene's intent in the record. *See* Response of the United States to Defendant's Post–Trial Motion at 3–5 (citing to Exhibits 10, 15, 16, 22, 26, 27, 30A–C, 42, 43, 46, 58, Trial Transcript at 202–211, 448–49, 503, 635–37, 646, 680, 682, 704, 797–98, 805–09, 904, 938–942, 1111–1256, and the Stipulation).

Gellene's third argument is that "[t]he government failed to show that the defendant did not act based on erroneous legal judgment." Defendant's Motion at 2. As the government points out, this argument appears to repeat the contention that the government did not prove the requisite intent, so the court repeats its holding that this argument does not entitle Gellene to a judgment of acquittal or a new trial. Furthermore, where, as here, the government bears the burden of proving intent to defraud, "a defendant's good faith belief in the lawfulness of his conduct is not a defense to bankruptcy fraud." *United States v. Zehrbach*, 47 F.3d 1252, 1262 (3rd Cir.1995), *cert. denied, Mer-*

*vis v. United States*, 514 U.S. 1067, 115 S.Ct. 1699, 131 L.Ed.2d 562 (1995).

■ Gellene next argues that "[t]he government failed to prove the requisite elements of Count Three in that it failed to establish that the defendant used a document in violation of 18 U.S.C. § 1623 and failed to demonstrate the element of materiality." Defendant's Post–Trial Motion at 2. As the court noted in its February 9, 1998 order denying Gellene's motion for a bill of particulars, "using" a document for purposes of section 1623 can take many different forms:

Courts have consistently construed the word "uses" in 18 U.S.C. § 1623(a) very broadly. In *United States v. Dudley*, 581 F.2d 1193 (5th Cir.1978), the prosecutor showed documents to the defendant in court, and she identified them as authentic documents, although she knew that they were false. *Id.* at 1197. This was held to constitute "use" of the documents. *Id.* at 1198; *see also United States v. Norton*, 755 F.2d 1428, 1430–31 (11th Cir.1985) (same). The *Dudley* court noted that it would be a closer question if a defendant merely identified documents in court which were not false but merely contained false statements, but it did not express an opinion on that scenario. 581 F.2d at 1198 n. 3. However, in such a situation the Tenth Circuit upheld the perjury conviction of a defendant who merely submitted evidence to a grand jury with knowledge that the evidence contained false statements. *United States v. Larranaga*, 787 F.2d 489 (10th Cir.1986).

February 9, 1998 order at 10 n. 4. At trial, witness David Gelfand testified that he presented the document containing false statements to Gellene during the November 29, 1995 fee hearing and submitted the document into evidence in furtherance of the fee application. Trial Transcript at 795. U.S. Trustee John Byrnes testified that prior to the hearing, Gellene identified the document as an exhibit that he intended to introduce at the hearing, and Byrnes also testified that the document became an exhibit at the hearing. Trial Transcript at 936; *see also id.* at 1278 (the court noted at the jury instruction conference that "it was Mr. Gellene who put the affidavit and materials together, did the outline for Mr. Gelfand, and his fingerprints

[figuratively] are all over this particular disclosure statement"). The court holds that there was sufficient evidence from which the jury could find that Gellene "used" the document in violation of 18 U.S.C. § 1623 and that a new trial is not required because of this issue.

A document is material if it has a natural tendency to influence or is capable of influencing the decision of the person to whom it was addressed. *United States v. Gaudin,* 515 U.S. 506, 509, 115 S.Ct. 2310, 132 L.Ed.2d 444 (1995); *United States v. Ross,* 77 F.3d 1525, 1545 (7th Cir.1996). At trial, David Gelfand testified that the purpose of introducing the document was to establish that John had disclosed to the court and the court had passed on the issue of Milbank's relationship with Goldman Sachs so that the court would grant Milbank's fee petition. Trial Transcript at 795. This is sufficient evidence of materiality; thus, the court finds that this argument does not entitle Gellene to a judgment of acquittal or a new trial.

Gellene's fifth argument is that the court erred by permitting the prosecution to introduce evidence outside the time period specified in the indictment while precluding the defendant from introducing evidence allegedly rebutting the government's proof. Defendant's Post–Trial Motion at 2–3. During the redirect examination of David Gelfand, the prosecution elicited testimony that after a Bankruptcy Rule 9024 hearing in December 1997, Milbank Tweed repaid $1.8 million in legal fees received for work on the Bucyrus–Erie bankruptcy case. Trial Transcript at 873. The defense immediately argued that the government had "opened the door" to events subsequent to the time period of the indictment, *id.,* and later attempted to introduce evidence related to the Rule 9024 proceedings, including: (1) Gellene's submission of a sworn affidavit to the Bankruptcy Court in March 1997 that acknowledged his errors in construing Bankruptcy Rule 2014; (2) Gel-

lene's participation in the Rule 9024 hearings; and (3) Gellene's second sworn submission to the Bankruptcy Court in November 1997. Defendant's Post–Trial Motion at 2–3.

The government objected to Gellene's attempt to explore the actions of other parties in 1997 during the cross-examination of government witness John Byrnes because those actions involved out-of-court statements of other parties that were hearsay and that had nothing to do with Gellene's state of mind in 1994 and 1995. Trial Transcript at 1082–91. The court sustained the objection, noting that Byrnes could be asked about certain events in 1997, but only for purposes of questioning Byrnes's prior statements, not to prove the state of mind of Gellene or others during 1997. *Id.* at 1088. The court reserved ruling on whether Gellene's actions and statements in 1997 could come in through Gellene's testimony. *Id.* at 1089.

During Gellene's testimony, the defense sought to introduce the documents (described above) prepared by Gellene in March 1997 after the discovery by others of the multiple representations. *Id.* at 1207. The government objected to certain uses of the documents, and the court ruled that the documents could be used to refresh Gellene's recollection of the events but that the documents themselves were not relevant to Gellene's intent in 1994 and 1995 and therefore would not go to the jury. *Id.* at 1211–12.

Gellene argues that it was error to exclude these documents because evidence of the Rule 9024 proceedings was "exploited by the government to suggest that defendant's former employer considered him to be culpable under those facts, and to further suggest that defendant's own participation in the Rule 9024 proceedings was relevant to his state of mind." Defendant's Post–Trial Motion at 3. However, the government's purpose in introducing the other actions from 1997 was to show Gellene's consciousness of guilt in February 1997, when he altered a document to deceive his partners.[2] Introducing evidence

---

**2.** David Gelfand testified that on February 24, 1997, Toni Lichstein told him that Jackson National Life had filed a motion seeking to have the court disgorge Milbank's fees that it had been awarded in the Bucyrus bankruptcy case. Trial Transcript at 799. Lichstein's secretary handed Gelfand a copy of Jackson National Life's brief in

support of the motion that Lichstein had received from Gellene (Exhibit 43), and Gelfand noted that there was no date on the brief. *Id.* at 800. Gelfand had difficulty getting the full set of motion papers from Gellene, and when Lichstein expressed concern to Gellene that Milbank had missed a filing deadline in the case, Gellene

of these discrete and relevant events does not "open the door" to all of the defendant's actions in 1997, especially to actions that are totally irrelevant to Gellene's state of mind in 1994 and 1995. The court stands by its ruling at trial that "what Mr. Gellene may have done or not done subsequent to the disclosure is certainly not relevant to the matter of intent and it is also not relevant to the matter of recantation because the recantation is not an issue with respect to any of the three counts that are before the jury." Trial Transcript at 1212. Therefore, this argument does not entitle Gellene to a judgment of acquittal or a new trial.

 Gellene next argues that he "was denied a fair trial because in the presence of the jury the government twice referred to his conversation with Ms. Toni Lichstein and Mr. David Gelfand on or about February 25, 1997 as a 'confession,' thereby inviting the jury to infer defendant's guilt on that basis." Defendant's Post-Trial Motion at 4. The defense objected, and the court admonished the prosecutor in the presence of the jury to "eliminate all the editorial comment." Trial Transcript at 774. The prosecutor also apologized for the use of the word "confession." *Id.* at 776.

The Seventh Circuit recently has held that a prosecutor's possibly improper characterization of a statement as a "confession" does not deprive a defendant of a fair trial:

> Marshall also argues that the prosecutor was guilty of misconduct when, in his rebuttal, he characterized her statements to FBI Agent O'Malley as "confessions." However, Marshall's objection to the remark was sustained and the words were stricken from the record. Even if improper, the single statement did not rise to the level of prejudicial error to deprive Marshall of a fair trial.

admitted that he had lied to them and that he had missed the deadline for filing a response to the motion. *Id.* at 801–03. Gellene then gave Gelfand a true copy of the brief (Exhibit 42), which was identical to Exhibit 43 except Gellene had whited-out the date on Exhibit 43. *Id.* at 805–06.

**3.** Although it is not inconceivable that Gellene will be able to distinguish *Marshall* or cite contrary authority on appeal, his failure to cite or discuss any cases in support of any of his argu-

*United States v. Marshall,* 75 F.3d 1097, 1109 n. 4 (7th Cir.1996). The present case is indistinguishable; therefore, this argument does not entitle Gellene to a judgment of acquittal or a new trial.[3]

Gellene's seventh argument is that the court erred when it failed to grant the defendant's motions in limine seeking to exclude evidence regarding defendant's bar memberships (or lack thereof) in various state and federal courts. Defendant's Post–Trial Motion at 4. Gellene does not offer any new argument to support this contention, so the court stands by the comments it made at trial to support its denial of those motions. Trial Transcript at 31–34, 1476–84. Similarly, Gellene's eighth through twelfth arguments merely restate his objections to the jury instructions, all of which were dealt with by the court at the jury instruction conference. *Id.* at 1274–80. Therefore, these arguments do not entitle Gellene to a judgment of acquittal or a new trial.

 Gellene's thirteenth contention is that "[t]he defendant was denied a fair trial because during rebuttal argument the government invited the jury to speculate about the defendant's guilt based on facts not in evidence and numerous misstatements of facts in evidence, while simultaneously assuring the jury that the government need not prove facts it had asserted would be proven during its opening statement." Defendant's Post–Trial Motion at 5. As the government notes, Gellene "makes no effort to identify the particulars of any supposedly improper comment among the 25 transcript pages of rebuttal argument." Government's Response at 11. Moreover, the defendant's counsel did not at any time object to the prosecutor's rebuttal argument, so the court has no idea which portions of the rebuttal argument the defen-

ments indicates that he and his counsel place no importance on whether his contentions have any foundation in law. The court reminds Mr. Gellene's counsel that in the Seventh Circuit, "[c]riminal defendants and their lawyers must abide by the rules that apply to other litigants, including the principle that litigating positions must have some foundation in existing law or be supported by reasoned, colorable arguments for change in the law." *State of Wisconsin v. Glick,* 782 F.2d 670, 673 (7th Cir.1986) (citations omitted).

dant feels were improper. As the court stated above (footnote 1, *supra*), it is not the duty of the court to "scour the record" for facts supporting a party's contentions. *Cf. Brasic v. Heinemann's Inc.*, 121 F.3d 281, 285 (7th Cir.1997). The court will not order a new trial or a judgment of acquittal on the basis of such a conclusory and unsupported argument.

Gellene next argues that "[t]he government failed to demonstrate the element of materiality on Count Three." Defendant's Post–Trial Motion at 5. The court has already considered and rejected this argument. *See supra* at 6.

Gellene's fifteenth argument is that the court erred by refusing to admit Exhibit 435, a May 1995 facsimile from David Goelzer to David Gelfand, John Gellene, and Albert Solochek about whether Jackson National Life had broken the law during the Bucyrus–Erie bankruptcy, because it would have established the defendant's state of mind regarding his testimony at the fee application hearing on November 29, 1995. Defendant's Motion at 5. The court excluded this document because it had nothing to do with Gellene's state of mind or any issue in the case [4] and was "so illegible that one couldn't read it if they wanted to." Trial Transcript at 1292. Gellene has not given the court any reason to reconsider this ruling; therefore, this argument does not entitle Gellene to a judgment of acquittal or a new trial.

■■ Gellene's final contention is that he "was denied a fair trial when, in the presence of the instructed jury and following the close of arguments, the Court directed the defendant to select that member of the sitting jury panel who would be deemed an alternate and not able to participate in jury deliberations." Defendant's Motion at 6. In order to establish reversible error in the selection of an alternate, the defendant must show that the selection was done in violation of the rules and that the defendant was actually prejudiced by the selection procedure. *United States v. Love*, 134 F.3d 595, 601 (4th Cir. 1998). As the government correctly argues, nothing in the Federal Rules of Criminal Procedure prevents a court from asking the defendant to randomly choose the alternate, whether it is done in the presence of the jury or not. Furthermore, the defendant could not have been actually prejudiced by the procedure; to the contrary, this procedure ensures that the selection of an alternate is completely open and arbitrary. Also, I explained to Mr. Gellene at the final pretrial conference that he would be asked to "randomly draw one of the juror's names from the box with their names in it and that juror will be designated the alternate and excused and that will take place right before they go in to deliberate." February 18, 1998 Final Pretrial Conference Transcript. Therefore, this argument does not entitle the defendant to a judgment of acquittal or a new trial.

For the aforementioned reasons, I hold that, considering the evidence in the light most favorable to the Government and deferring to the credibility determinations of the jury, the record contains sufficient evidence from which the jury could find guilt beyond a reasonable doubt; therefore, Gellene is not entitled to a judgment of acquittal pursuant to Fed.R.Crim.P. 29(c). Furthermore, I hold that a new trial is not required in the interest of justice pursuant to Fed.R.Crim.P. 33.

Accordingly,

**IT IS ORDERED** that the defendant's motion for a judgment of acquittal pursuant to Fed.R.Crim.P. 29(c) be and the same is hereby **DENIED**; and

**IT IS FURTHER ORDERED** that the defendant's motion for a new trial pursuant

---

**4.** Indeed, not only was Goelzer's facsimile document entirely irrelevant to the case, much of his approximately eight hours of testimony was irrelevant, as the court noted at trial: "it may be good to know about all of these things but, frankly, they don't have much to do with the price of tea in China or the three counts in this indictment." Trial Transcript at 379. Besides giving a background context to the case, the main purpose of Goelzer's testimony was to establish that Bucyrus–Erie never was informed of Gellene's multiple representations, testimony which became largely moot when Gellene himself admitted that he never disclosed these representations to Goelzer. Trial Transcript at 1235–37. Excluding Exhibit 435 as irrelevant was merely one small sandbag against an overwhelming flood of irrelevant testimony.

**922**

to Fed.R.Crim.P. 33 be and the same is hereby **DENIED.**