# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT JACKSON
### Assigned on Briefs January 8, 2013

## TYRONE LEON NELSON v. STATE OF TENNESSEE

**Direct Appeal from the Circuit Court for Tipton County**
**No. 6874     Joseph H. Walker, Judge**

---

**No. W2012-00521-CCA-R3-CD  - Filed August 19, 2013**

---

A Tipton County Grand Jury returned an indictment against Defendant, Tyrone Leon Nelson, charging him with possession of more than one-half ounce of marijuana with intent to deliver, possession of drug paraphernalia, and possession of a firearm with the intent to go armed during the commission of a dangerous felony.  After a jury trial, Defendant was found guilty of the lesser offense of facilitation of possession of more than one-half ounce of marijuana with intent to deliver, and possession of a firearm with the intent to go armed during the commission of a dangerous felony.  Defendant was acquitted of the paraphernalia charge.  The trial court sentenced Defendant to eleven months, twenty-nine days for the facilitation charge and three years for the firearm charge to be served concurrently for an effective three-year sentence in the Department of Correction.  On appeal, Defendant argues that (1) the trial court erred by failing to grant his motion for acquittal of the conviction for possession of a firearm during the commission of a dangerous felony when the jury acquitted him of the underlying felony, and (2)the evidence was insufficient to support his conviction for facilitation of possession of more than one-half ounce of marijuana with intent to deliver.  After a thorough review, we affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Circuit Court Affirmed**

THOMAS T. WOODALL, J., delivered the opinion of the Court, in which JERRY L. SMITH and D. KELLY THOMAS, JR., JJ., joined.

Taylor D. Forrester, Knoxville, Tennessee,  for the appellant, Tyrone Leon Nelson.

Robert E. Cooper, Jr., Attorney General and Reporter; David H. Findley, Assistant Attorney General; D. Michael Dunavant, District Attorney General; and James Walter Freeland, Jr., Assistant District Attorney General, for the appellee, the State of Tennessee.

# OPINION

## I. Background

*State's Proof*

At approximately 6:55 p.m. on July 7, 2010, Officer Michael Short of the Covington Police Department observed a 2002 Chevrolet Impala leave Kat Smith's house on Peeler Road. Officer Short initiated a traffic stop because no one in the vehicle was wearing a seatbelt when the vehicle left the house. Danny DeMoss was the driver of the car, which was registered to Defendant, and Defendant was in the front passenger seat. Jeremy Hurdle and Larocco Winbush were sitting in the back.

Officer Short spoke with Mr. DeMoss, and while running a check on Mr. DeMoss' driver's license, which later came back as revoked, Officer Short noticed an odor of marijuana emanating from the vehicle. He then asked everyone to step out of the car. According to Officer Short, all of the occupants in the vehicle appeared nervous and exhibited "suspicious" or "abnormal" behavior. Officer Short searched Defendant's vehicle and found approximately one ounce (26.8 grams) of marijuana in the center console and a nine millimeter Hi-Point handgun "stuck between the console and the passenger's seat." Defendant indicated that the items belonged to him, and he signed a property receipt acknowledging ownership of the items. Defendant had $146 in his pocket that was also listed on the receipt. Officer Short could not recall if Defendant advised him that the gun was in the car prior to the search.

Officer Short and other officers who had arrived on the scene then searched the trunk of Defendant's car and found a red backpack containing seventeen ounces (399.5 grams) of marijuana along with empty plastic sandwich bags and a set of digital scales. No one claimed ownership of the items found in the trunk of Defendant's vehicle. Because there was no further room on Defendant's property receipt sheet, and because the backpack contained papers bearing Mr. DeMoss' name, Officer Short listed the items from the trunk and $111 from Mr. DeMoss' pocket on Mr. DeMoss' property receipt sheet. Officer Short did not recall asking Defendant if he was "taking" the charge for Mr. DeMoss.

Officer Rodney McCurry testified that he assisted with the stop on July 7, 2010. He heard Defendant admit to Officer Short that the gun and small bag of marijuana belonged to him. Officer McCurry also testified that Defendant gave Officer Short permission to search the vehicle.

Danny DeMoss, Jr. had borrowed Defendant's car, and testified that he was driving the vehicle on July 7, 2010, when it was stopped by Officer Short. His driver's license was revoked at the time. Mr. DeMoss testified that he had found "21 ounces of marijuana" one day on the ground while walking his dog down the street "on Chicken George Trail between Ripley and Henning." He did not tell anyone that he found the marijuana, and he placed it in the red backpack to keep for personal use.

Mr. DeMoss admitted that he had purchased marijuana in the past, but maintained that he had found the marijuana that police located in the trunk of Defendant's car. Mr. DeMoss testified that after he found the marijuana, he hid it in a field. He later picked it up, placed it in Defendant's trunk, and picked up Defendant, Mr. Hurdle, and Mr. Winbush. They drove to Kat Smith's house to eat with her granddaughters and were pulled over after leaving the house.

Mr. DeMoss claimed that he purchased the digital scales found in the backpack for $30 from someone named "Ghost." Mr. DeMoss testified that he purchased the plastic sandwich bags to fill with marijuana from the larger bag for personal use. He used the digital scales to determine how much marijuana he smoked at a time, not for the purpose of selling it. He also used the scales to see how much marijuana he had found. Mr. DeMoss testified that he would place 20-30 grams of marijuana inside a bag, which would last approximately one week.

On cross-examination, Mr. Demoss testified that he had borrowed Defendant's car on previous occasions. He said there was no reason for Defendant to know that he did not have a driver's license. On July 7, 2010, Mr. DeMoss picked up the bag of marijuana after he had obtained Defendant's car. He claimed that he never told anyone else in the car about the large bag of marijuana in the trunk, and he did not sell any marijuana on his way to Covington. Mr. DeMoss testified that he was not aware of the gun in Defendant's car prior to the stop. He said that although he never admitted to the officer that the marijuana belonged to him, he never asked anyone else in the car to claim ownership of it. Mr. DeMoss testified that he never heard anyone claim ownership of the drugs. He admitted that he signed a paper indicating that 17 ounces of marijuana, a box of sandwich bags, a set of electric scales, a red backpack, and $111 belonged to him. Mr. DeMoss claimed that he thought that the marijuana referenced all of the marijuana found in the car including the small bag. He said that he signed the paper because he admitted that everything belonged to him, and he did not want anyone else to be charged with a crime. Mr. DeMoss admitted that Defendant smoked marijuana on the day of the stop, and he thought one more person in the back seat was smoking it. He did not know who had the gun.

*Defendant's Proof*

Larocco Winbush testified that Mr. DeMoss had not mentioned that he had marijuana in Defendant's car on July 7, 2010, before they were stopped by police. After everyone was transported to the jail, Defendant asked Mr. Winbush to admit to ownership of the marijuana, but Mr. Winbush refused. He did not know if Defendant knew there was marijuana in the car. He also said that Mr. DeMoss admitted to having the drugs, and Defendant admitted to having the gun.

Jeremy Hurdle testified that earlier in the day on July 7, 2010, he had been "chilling" at Defendant's mother's house, and he then went home. He later rode to Kat Smith's house with Mr. DeMoss to eat dinner. Mr. Hurdle testified that when they left Ms. Smith's house, Mr. DeMoss was pulled over by Officer Short. He said that Mr. DeMoss did not ask him or anyone else in the car to take the charges for the marijuana in the vehicle, and no statements were made inside the car before the stop.

Defendant testified that he had a learning disability and a "little bit" of trouble reading. He was still in the tenth grade at the age of 18 and dropped out of high school. Defendant testified that he had not worked since leaving high school, and he received "Social Security disability." On July 7, 2010, Defendant was at home at his mother's house in Ripley, and Mr. DeMoss and Mr. Winbush were also there. He said that Mr. DeMoss left in Defendant's car at some point to "go to Chicken George [Trail] to put some clothes on." Defendant testified that Mr. DeMoss later returned and said that he wanted to go to Covington to see his girlfriend and eat at her grandmother's house.

Defendant testified that he was unaware that Mr. DeMoss did not have a driver's license when he let Mr. DeMoss borrow his car. He said that when they left for Covington, he did not see Defendant put anything in the car, and he did not know that there was any marijuana in the vehicle. Defendant testified that he and Mr. DeMoss had smoked marijuana earlier in the day, but no one smoked any in the car.

Defendant testified that after they were pulled over in Covington, Mr. DeMoss did not mention that there was anything in the car. Defendant then gave the officer permission to search the vehicle. He said that he told the officer that there was a black pistol under the seat that he had placed in the car three days earlier. Defendant testified that he did not know about the small bag of marijuana in the console. He said that Mr. DeMoss initially asked him to take the marijuana charge, and the officer indicated that Defendant would be charged with everything in the car unless someone else admitted to it. Defendant testified that he did not tell the officer that any of the marijuana in the car belonged to him, and he claimed that the officer lied during his testimony. Defendant admitted that he signed a piece of paper, but

-4-

claimed that he "didn't really know what it was." He said that he did not sell marijuana, and he did not see Mr. DeMoss sell any.

On cross-examination, Defendant testified that he received the gun found in his car from a friend whose nickname was "Cane." He had known "Cane" for a couple of months but did not know his real name. Defendant claimed that "Cane" left the gun in Defendant's car. Defendant testified that Mr. DeMoss provided the marijuana that he and Mr. DeMoss smoked earlier in the day at Defendant's mother's house, but he did not know how Mr. DeMoss obtained it. He thought that Mr. DeMoss may have smoked marijuana in the car on the way to Covington. Defendant testified that Mr. DeMoss never told him about finding a pound of marijuana on Chicken George Trail. He said that the $111 found in his pocket by officers came from cashing his disability check. Defendant testified that he never told Officer Short that any of the marijuana belonged to him.

## II. Analysis

### A. Sufficiency of the Evidence

Defendant argues that the evidence presented at trial was insufficient to support his conviction for facilitation of possession of more than one-half ounce of marijuana with the intent to deliver, a Class A misdemeanor, because there was no proof that he knew Mr. DeMoss had marijuana in the trunk. We disagree.

When an accused challenges the sufficiency of the convicting evidence, our standard of review is whether, after reviewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). The trier of fact, not this Court, resolves questions concerning the credibility of the witnesses, and the weight and value to be given the evidence as well as all factual issues raised by the evidence. *State v. Tuttle*, 914 S.W.2d 926, 932 (Tenn. Crim. App. 1995). Nor may this Court reweigh or re-evaluate the evidence. *State v. Cabbage*, 571 S.W.2d 832, 835 (Tenn. 1978). On appeal, the State is entitled to the strongest legitimate view of the evidence and all inferences therefrom. *Id*. Because a verdict of guilt removes the presumption of innocence and replaces it with a presumption of guilt, the accused has the burden in this Court of illustrating why the evidence is insufficient to support the verdict returned by the trier of fact. *State v. Tuggle*, 639 S.W.2d 913, 914 (Tenn. 1982). "[D]irect and circumstantial evidence should be treated the same when weighing the sufficiency of [the] evidence." *State v. Dorantes*, 331 S.W.3d 370, 381 (Tenn. 2011).

Concerning the offense of facilitation, Tennessee Code Annotated Section 39-11-403(a) provides:

(a) A person is criminally responsible for the facilitation of a felony, if, knowing that another intends to commit a specific felony, but without the intent required for criminal responsibility under § 39-11-402(2), the person knowingly furnishes substantial assistance in the commission of the felony.

In the present case, a reasonable jury could conclude defendant was aware that Mr. DeMoss possessed more than one pound of marijuana with intent to deliver, and he facilitated the offense by allowing Mr. DeMoss to use his car to make the delivery. Defendant and Mr. DeMoss were cousins, and Defendant regularly allowed Mr. DeMoss the use his car. After Officer Short pulled Defendant's vehicle over, he noticed an odor of marijuana coming from the car. He testified that all of the occupants in the car appeared nervous and exhibited "suspicious" or "abnormal" behavior. When Officer Short searched the vehicle, he found 26.8 grams of marijuana in the center console of the car, along with a nine millimeter handgun "stuck in between the console and the passenger's seat." In the trunk Officer Short found a backpack containing 399.5 grams of marijuana, empty plastic sandwich bags, and a set of digital scales.

Although Mr. DeMoss testified that he found the marijuana and planned to keep it for personal use, the jury was free to disbelieve this testimony. The jury was likewise free to disbelieve testimony that Defendant knew nothing about the marijuana in the car. *See State v. Nash*, 104 S.W.3d 495, 500 (Tenn. 2003)("[G]iven the large quantity of marijuana along with the drug paraphernalia, it was reasonable to find that [driver] possessed the marijuana with the intent to sell or deliver.").

Based on the evidence presented a rational juror could infer that Defendant committed the offense of facilitation of possession of marijuana with intent to deliver.

### B. Interpretation of Tennessee Code Annotated section 39-17-1324 and Inconsistent Verdicts

Defendant asserts that the trial court misinterpreted the applicable statute. Defendant also argues that his conviction for possessing a firearm with the intent to go armed during the commission of a dangerous felony cannot be sustained because the jury acquitted him of the requisite dangerous felony of possession of more than one-half ounce of marijuana with intent to deliver and convicted him of a misdemeanor. We disagree.

Tenn. Code Ann. § 39-17-1324 provides:

(a) **It is an offense to possess a firearm with the intent to go armed during the commission of or attempt to commit a dangerous felony.**

(b) It is an offense to employ a firearm during the:

> (1) Commission of a dangerous felony;
> (2) Attempt to commit a dangerous felony;
> (3) Flight or escape from the commission of a dangerous felony; or
> (4) Flight or escape from the attempt to commit a dangerous felony.

(c) A person may not be charged with a violation of subsection (a) or (b) if possessing or employing a firearm is an essential element of the underlying dangerous felony as charged. In cases where possession or employing a firearm are dangerous elements of the charged offense, the state may elect to prosecute under a lesser offense wherein possession or employing a firearm is not an element of the offense.

(d) A violation of subsection (a) or (b) is a specific and separate offense, which shall be pled in a separate count of the indictment or presentment and tried before the same jury and at the same time as the dangerous felony. The jury shall determine the innocence or guilt of the defendant unless the defendant and state waive the jury.

(emphasis added). A "[d]angerous felony" includes "[a] felony involving the sale, manufacture, distribution or possession with intent to sell, manufacture or distribute a controlled substance defined in part 4 of this chapter[.]" Tenn. Code Ann. § 39-17-1324(i)(1)(L). A plain reading of the statute does not require **conviction** of the "dangerous felony" as an element of the offense.

In *State v. Johnson*, 79 S.W.3d 522, 526 (Tenn. 2002), our Supreme Court summarized the well-known principles of statutory construction as follows:

> The construction of a statute is a question of law subject to *de novo* review with no presumption of correctness. *Ivey v. Trans Global Gas & Oil*, 3 S.W.3d 441, 446 (Tenn. 1999). The primary purpose of statutory construction is "to ascertain and give effect to the legislative intent without unduly restricting or expanding a statute's coverage beyond its intended scope." *Owens v. State*, 908 S.W.2d 923, 926 (Tenn. 1995) (citation omitted). Courts must restrict

their review "to the natural and ordinary meaning of the language used by the legislature in the statute, unless an ambiguity requires resort elsewhere to ascertain legislative intent." *Browder v. Morris*, 975 S.W.2d 308, 311 (Tenn. 1998) (citing *Austin v. Memphis Pub. Co.*, 655 S.W.2d 146, 148 (Tenn. 1983)).

*Johnson*, 79 S.W.3d at 526.

Ambiguity in a statute arises when the statutory provision at issue is "capable of conveying more than one meaning." *Bryant v. HCA Health Services of Tenn., Inc.*, 15 S.W.3d 804, 809 (Tenn. 2000). "When considering the meaning of a statute, courts 'must consider the language employed in context of the entire statute without any forced or subtle construction which would extend or limit its meaning.'" *Johnson*, 79 S.W.3d at 526 (quoting *Browder*, 975 S.W.2d at 311 (citing *Wilson v. Johnson County*, 879 S.W.2d 807, 809 (Tenn. 1994))).

In the present case, although Defendant was charged with possession of more than one-half ounce of marijuana with intent to deliver, one of the dangerous felonies enumerated in Tenn. Code Ann. § 39-17-1324, the jury convicted him of facilitation of possession of more than one-half ounce of marijuana with the intent to deliver, a Class A misdemeanor. Defendant, relying on cases from Florida and Illinois, argues that because he was not convicted of the underlying felony for the firearm charge and instead convicted of a misdemeanor, the verdict is "truly inconsistent" and cannot be sustained. Defendant asserts that the verdicts in his case are "**legally** inconsistent," as opposed to "**factually** inconsistent" verdicts which Tennessee law allows. What Defendant refers to as "legally inconsistent" is also referred to as "truly inconsistent" in some cases. Defendant further argues that the trial court misapplied the plain meaning of Tennessee Code Annotated section 39-17-1324.

Inconsistent verdicts are permitted as long as there is sufficient evidence for a rational trier of fact to find a defendant guilty beyond a reasonable doubt. *Dunn v. United States*, 284 U.S. 390 (1932), *overruled on other grounds by Sealfon v United States*, 332 U.S. 575 (1948). "Courts have always resisted inquiring into a jury's thought processes." *United States v. Powell*, 469 U.S. 57, 67 (1984). This resistance is perhaps best illustrated in the cases involving a defendant's challenge to the consistency of a jury's verdicts in a multi-count indictment. Beginning most notably with *Wiggins v. State*, 498 S.W.2d 92 (Tenn. 1973), in which our supreme court adopted the analysis of the United States Supreme Court in *Dunn*, appellate courts in Tennessee have consistently declined to disturb one conviction on the basis that the jury's acquittal on another offense is inconsistent, even when the elements and evidence of the two offenses intertwine or are the same. *See State v. Derek T. Payne*, No. W2001-00532-CCA-R3-CD, 2002 WL 31624813 (Tenn. Crim. App., Nov. 20, 2002), *perm. to appeal denied* (Tenn. May 9, 2003)(conviction of second degree murder as

a lesser included offense of felony murder upheld even when convicted of underlying felony); *State v. Michael Shane Grogger*, No. M2008-02015-CCA-R3-CD, 2009 WL 3832921, at *14(Tenn. Crim. App. Nov. 17, 2009)(defendant's conviction for felony murder upheld despite being acquitted of the underlying felony).

In *State v. Tony Scott Walker,* No. 02C01-9704-CC-00147, 1997 WL 746433 (Tenn. Crim. App., 1997), defendant was convicted of first degree felony murder, but was acquitted of the underlying felony of especially aggravated robbery. Despite the inconsistencies presented by the two verdicts, this Court upheld the defendant's conviction for felony murder under the principles set forth in *Wiggins* and *Powell.* *Id*. 1997 WL 746433, at *5. In so doing, this Court observed that "any attempt to separate a verdict that may be the product of an error that worked against one of the parties would be based on pure speculation or would involve inappropriate inquiry into the jury's deliberation." *Id*. at *4 (citing *Powell*, 469 U.S. at 66). Thus, this Court's only inquiry when presented with inconsistent verdicts is the sufficiency of the evidence of the convicted offense. *Id*. at *5; *see Wiggins*, 498 S.W.2d at 93; *see also State v. Shelly Minor*, No. W2010-01677-CCA-R3-CD, 2012 WL 3055776 (Tenn. Crim. App. July 26, 2012) *perm. app. denied* (Tenn. Jan. 22, 2013)(defendant's convictions for second degree murder and leaving the scene of an accident involving injury or death as a lesser-included offense of leaving the scene of an accident resulting in death were affirmed).

In *Dunn*, 284 U.S. 390, defendant was found guilty of maintaining a common nuisance by keeping intoxicating liquor for sale at a specified place, but acquitted of the offenses of possession and sale of intoxicating liquors, even though the evidence was the same for all counts. The defendant challenged the inconsistency of the verdicts, arguing that the jury's finding that he did not unlawfully sell or possess liquor necessarily negated a finding that he committed the nuisance offense. In upholding the defendant's nuisance conviction, the Supreme Court observed that:

> [t]he most that can be said in such cases is that the verdict shows that either in the acquittal or the conviction the jury did not speak their real conclusions, but that does not show that they were not convinced of the defendant's guilt. We interpret the acquittal as no more than their assumption of a power which they had no right exercise, but to which they were disposed through lenity.

*Id*., 284 U.S. at 393 (citation omitted). The court declined to disturb the defendant's nuisance conviction, observing that "[e]ach count in an indictment is regarded as if it was a separate indictment." *Id*. (citation omitted).

The *Dunn* rule continues to rest "on a sound rationale" that reflects a "recognition of the jury's historic function, in criminal trials, as a check against arbitrary or oppressive exercises of power by the executive government." *Powell*, 469 U.S. at 65. The *Powell* court rejected, "as imprudent and unworkable, a rule that would allow criminal defendants to challenge inconsistent verdicts" in the event the inconsistency worked to their disadvantage. *Id*. at 67, 105 S.Ct. at 477. "Such an individualized assessment of the reason for the inconsistency would be based either on pure speculation, or would require inquiries into the jury's deliberations that courts generally will not undertake." *Id*. Although jurors are charged to follow the law as instructed, once the evidence is presented and the case submitted to the jurors, "the litigants must accept the jury's collective judgment." *Id.*

In the recent case of *State v. Marlo Davis*, No. W2011-01548-CCA-R3-CD, 2013 WL 2297131, at *8-11 (Tenn. Crim. App. May 21, 2013), defendant was convicted of second degree murder and reckless homicide. The trial court merged the reckless homicide conviction into the second degree murder conviction. On appeal, defendant argued that the verdicts in his case were "mutually exclusive" because a guilty verdict for reckless homicide on his premeditated murder charge logically excluded a finding of guilty for second degree murder on the felony murder count. In discussing the holdings in *Dunn* and *Powell*, a panel of this Court wrote:

> The "alternative rationale" of *Dunn*—that such inconsistencies often are a product of jury lenity—continues to reflect a "recognition of the jury's historic function, in criminal trials, as a check against arbitrary or oppressive exercises of power by the Executive Branch." *Id*. at 65. As the *Dunn* Court noted, where **truly inconsistent verdicts** have been reached, "[t]he most that can be said . . . is that the verdict shows that either in the acquittal or the conviction the jury did not speak their real conclusions, but that does not show that they were not convinced of the defendant's guilt." 284 U.S. at 393. The rule in *Dunn*, the *Powell* Court stated, has stood without exception for fifty-three years and should remain that way. 469 U.S. at 69.
>
> In so holding, the *Powell* Court reasoned that the rule espoused in *Dunn* embodied "a prudent acknowledgment of a number of factors." *Id*. at 65. First, inconsistent verdicts should not necessarily be interpreted as a windfall to the prosecution at the defendant's expense because the jury may have "**properly reached its conclusion on the compound offense, and then through mistake, compromise, or lenity, arrived at an inconsistent conclusion on the lesser offense**." *Id*. Of course, the prosecution has no recourse to correct the jury's error under such circumstances, the government being precluded from challenging the acquittal by the double jeopardy clause.

*Id.* (citations omitted). Therefore, the inconsistent verdicts "present a situation where 'error,' in the sense that the jury has not followed the court's instructions, most certainly has occurred, but it is unclear whose ox has been gored." *Id.* "Given this uncertainty, and the fact that the Government is precluded from challenging the acquittal, it is hardly satisfactory to allow the defendant to receive a new trial on the conviction as a matter of course" and such is not required by the Constitution. *Id.* (citing *Harris v. Rivera*, 454 U.S. 339 (1981)). Therefore, according to the Court in *Powell*, "the possibility that the inconsistent verdicts may favor the criminal defendant as well as the Government militates against review of such convictions at the defendant's behest."

Second, any attempt to separate a verdict that may be the product of an error that worked against one of the parties would be based on pure speculation or would involve inappropriate inquiry into the jury's deliberations. *Id.* at 66. The *Powell* court rejected, "as imprudent and unworkable, a rule that would allow criminal defendants to challenge inconsistent verdicts" in the event the inconsistency worked to their disadvantage. *Id.* at 67. "Such an individualized assessment of the reason for the inconsistency would be based either on pure speculation, or would require inquiries into the jury's deliberations that courts generally will not undertake." *Id.* Although jurors are charged to follow the law as instructed, once the evidence is presented and the case submitted to the jurors, "the litigants must accept the jury's collective judgment." *Id.* "Courts have always resisted inquiring into a jury's thought processes[.]" *Id.* (citation omitted).

Third, a criminal defendant is already protected against jury irrationality or error by independent review of the sufficiency of the evidence by the trial and appellate courts. *Id.* at 67. The *Powell* Court held that further safeguards against jury irrationality were unnecessary. *Id.*

*Id.* (emphasis added).

In one of the Florida cases relied upon by Defendant in support of his argument that truly ("legally") inconsistent verdicts cannot stand in Tennessee, the District Court of Appeal of Florida, Fourth District noted that in accordance with *Dunn*, federal courts permit inconsistent verdicts. *Gonzalez v. State*, 440 So.2d 514, 515 (Fla. Dist. Ct. App. 1983). The court went on to point out:

Such verdicts have included those which found a defendant guilty of conspiracy while acquitting him of the substantive act and those which found

-11-

a defendant guilty of some counts and innocent of others when all the evidence was provided by a single witness. True inconsistent verdicts, those in which an acquittal on one count negates a necessary element for conviction on another count, are rare, but even those have been upheld by Federal courts. *Dunn*; *United States v. Dudley*, 581 F.2d 1193 (5th Cir. 1978).

While many states adhere to the federal rule, a substantial minority of states make an exception for "true" inconsistent verdicts. *See People v. Bullis*, 30 A.D.2d 470, 294 N.Y.S.2d 331 (N.Y. App. 1968), which attempts to distinguish "true" inconsistent verdicts from others; *DeSacia v. State*, 469 P.2d 369 (Alaska 1970); *People v. Pearson,* 16 Ill. App.3d 543, 306 N.E.2d 539 (1973); *People v. Goodchild*, 68 Mich. App. 226, 242 N.W.2d 465 (1976); *People v. Dercole*, 72 A.D.2d 318, 424 N.Y.S.2d 459 (N.Y. App. 1980); *Cochran v. State*, 136 Ga. App. 125, 220 S.E.2d 477 (1975).

After initially adopting the federal rule in *Goodwin v. State*, 157 Fla. 751, 26 So.2d 898 (1946), the Florida Supreme Court apparently recognized the "true" inconsistent verdict exception to the rule in *Mahaun v. State*, 377 So.2d 1158 (Fla. 1979). *Mahaun* held that a conviction of felony murder must be vacated if the jury acquits the defendant of the underlying felony charge because the acquittal constitutes a specific finding of the non-existence of the felony. Subsequently, in *Redondo v. State*, 403 So.2d 954 (Fla. 1981), the court vacated a conviction for the possession of a firearm during the commission of a felony after the jury acquitted Redondo of aggravated battery and attempted aggravated battery charges. The import of these decisions was recently clarified by the Supreme Court in *Eaton v. State*, 438 So.2d 822 (Fla. 1983) wherein the court stated in rejecting a claim of inconsistency:

> The distinction between these cases and the case at bar is obvious. In the cited cases the underlying felony was a part of the crime charged-without the underlying felony the charge could not stand.
>
> The jury is, in all cases, required to return consistent verdicts as to the guilt of an individual on interlocking charges.

*Id.*

A review of case law does not reveal that courts in Tennessee have recognized the "true" inconsistent verdict exception to the rule in *Dunn*. Therefore Defendant's conviction

-12-

for possessing a firearm with the intent to go armed during the commission of a dangerous felony is proper in this case.  The next inquiry is whether the evidence was sufficient to support Defendant's convictions.

We have already determined that the evidence was sufficient to support Defendant's conviction for facilitation of possession of more than one-half ounce of marijuana with intent to deliver.  Likewise, the evidence was sufficient to support Defendant's conviction for possession of a firearm with the intent to go armed during the commission of a dangerous felony.  It was undisputed that Defendant possessed the nine millimeter handgun found in the car by police.  Defendant admitted to its ownership, and it was found by the passenger seat where he was sitting. There was proof that Defendant and Mr. DeMoss were cousins and that Defendant allowed Mr. DeMoss to regularly use his car.  The jury could have rejected Defendant's testimony that he did not know about the large amount of marijuana in the car or that there were scales and baggies.  As pointed out by the State, the jury could have found that Defendant was aware that Mr. DeMoss possessed the drugs and that Defendant armed himself in anticipation of possessing the marijuana with intent to deliver it.  This issue is without merit.  For the foregoing reasons, the judgments of the trial court are affirmed.

_____
THOMAS T. WOODALL, JUDGE