IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

_____

No. 98-10396
_____


UNITED STATES OF AMERICA,

                                        Plaintiff-Appellee,

        versus

ALLEN LANDERMAN,

                                        Defendant-Appellant.

- - - - - - - - - -
Appeal from the United States District Court
for the Northern District of Texas
- - - - - - - - - -
February 12, 1999

Before KING, Chief Judge, and POLITZ and BENAVIDES, Circuit
Judges.

BENAVIDES, Circuit Judge:

        Allen Landerman appeals the sentence imposed after he
pleaded guilty under 18 U.S.C. § 371 to one count of conspiracy
to commit mail fraud, wire fraud, and money laundering. We affirm
in part and dismiss the appeal in part.

        Landerman participated in a scheme that established
companies to market oil and gas drilling projects and to solicit
investors. Acting as attorney for marketing companies established
as part of the scheme, Landerman misled salesmen and investors,
drafted intentionally misleading documents, served as a reference
to encourage investments in the scheme, drafted promissory notes
to conceal the conspirators' actual use of invested funds, and

helped design a shell holding company to hide other transactions within the scheme. Landerman also worked to establish Exciting Tans, a business providing sexually oriented services to reward salesmen and other employees of the scheme. Landerman laundered checks for $15,000 and $8,000 through his attorney trust account to cover Exciting Tans start-up expenses, despite his knowledge that the funds in fact were oil drilling investments. The scheme raised approximately $6.4 million while Landerman was involved, resulting in a net loss to investors of approximately $6.1 million.

A jury convicted Landerman of two counts of money laundering and one count of conspiracy to commit mail fraud, wire fraud, and money laundering. This Court overturned Landerman's conviction and remanded for further proceedings. *See United States v. Landerman*, 109 F.3d 1053, *as modified*, 116 F.3d 119 (5th Cir. 1997). Following remand, Landerman entered into a plea agreement and pleaded guilty to conspiracy. The district court accepted his plea and granted the government's motion to dismiss the other charges. Acting pursuant to the United States Sentencing Guidelines, the district court sentenced Landerman to sixty months in prison and three years of supervised released and ordered Landerman to pay a $10,000 fine.

Landerman raises three issues on appeal. First, he argues that the district court erred when it sentenced him under the

money laundering guideline by considering the total amount lost to the fraudulent scheme, instead of just the amount that he himself laundered. Second, Landerman argues that the district court abused its discretion when it denied his request for a downward departure from the sentence set by the guidelines. Third, Landerman argues that the district court erred in imposing the $10,000 fine. We uphold the sentence.

A

We review the district court's application of the Sentencing Guidelines *de novo* and its findings on the value of funds used to determine the sentence for clear error. *See United States v. Dupre*, 117 F.3d 810, 825 (5th Cir. 1997), *cert. denied*, 118 S. Ct. 857 (1998). We uphold the sentence as long as it results from a correct application of the guidelines to factual findings that are not clearly erroneous. *See United States v. Sarasti*, 869 F.2d 805, 806 (5th Cir. 1989).

Landerman argues that the district court erred in grouping together, for sentencing purposes, the fraud and money laundering offenses that underlay his conspiracy conviction. A defendant convicted of a conspiracy to commit more than one offense is treated as if he had been convicted on a separate count of conspiracy for each underlying crime. *See* U.S. Sentencing Guidelines Manual § 1B1.2(d). The guideline applicable to a conspiracy count is § 2X1.1, which directs the court to sentence

conspirators according to whichever guidelines would apply to their underlying substantive offenses--in this case, § 2F1.1, which is the fraud guideline, and § 2S1.1, which is the money laundering guideline. The district court, according to Landerman, acted pursuant to § 3D1.2(d)[1] and grouped together the fraud and money laundering offenses in order to consider the aggregated $6.1 million as the harm of a single offense. From there, according to Landerman's analysis, the district court, pursuant to § 3D1.3(b), applied the relevant guideline that produced the highest offense level, § 2S1.1 instead of § 2F1.1. Section 2S1.1 provides that if the value of funds involved exceeds $6,000,000, then the offense level increases by eight. There is no increase in the offense level if the laundering involves $100,000 or less. Landerman argues that, when sentencing him under § 2S1.1, the court should have considered only the $23,000 that he himself laundered and should not have grouped that amount with the total amount acquired through fraud.

We begin by noting that the record does not evince on its face that the district court grouped Landerman's offenses. The presentence report relied on § 1B1.3 to recommend a base offense

---

[1]Section 3D1.2(d) groups together counts involving "substantially the same harm" when "the offense level is determined largely on the basis of the total amount of harm or loss, the quantity of a substance involved, or some other measure of aggregate harm." Note 6 of the commentary accompanying § 3D1.2(d) states that a conspiracy to commit an offense is covered under that subsection if the offense that is the object of the conspiracy is covered under the subsection.

level of 30. Under § 1B1.3, Landerman bears responsibility for "all reasonably foreseeable acts and omissions of others in furtherance of [] jointly undertaken criminal activity." The presentence report states that virtually all of the $6.1 million acquired by the scheme during Landerman's involvement was laundered. Under this factual scenario, because that laundering was reasonably foreseeable to Landerman, who helped devise a shell company to hide fraudulently obtained funds, § 1B1.3 makes Landerman responsible for the entire $6.1 million. Although § 1B1.3(a)(2) allows for grouping offenses to which § 3D1.2(d) would apply, the presentence does not reach this provision and instead holds Landerman responsible for the foreseeable laundering undertaken by his co-conspirators. The district court specifically adopted the presentence report's factual findings. These findings provide an adequate basis to affirm Landerman's sentence without our having to determine the § 3D1.2(d) issue.[2]

---

[2]Landerman apparently argues that the district court could not have reached a base offense level of 30 without grouping, because contrary to the presentence report, nothing in the record suggests that the entire $6.1 million was laundered. A district court may rely on a presentence report in making factual determinations. *See United States v. Montoya-Ortiz*, 7 F.3d 1171, 1180 (5th Cir. 1993). "If information is presented to the sentencing judge with which the defendant would take issue, the defendant bears the burden of demonstrating that the information cannot be relied upon because it is materially untrue, inaccurate or unreliable." *United States v. Angulo*, 927 F.2d 202, 205 (5th Cir. 1991). Although Landerman objected at sentencing to the presentence report, he did not show by a preponderance of the evidence that the money was not laundered. *See, e.g., United States v. Mourning*, 914 F.2d 699, 706 (5th Cir. 1990). As such,

Were we to assume that the district court grouped Landerman's offenses under § 3D1.2(d), such grouping would be proper. Landerman relies on *United States v. Tansley*, 986 F.2d 880 (5th Cir. 1993), *United States v. Johnson*, 971 F.2d 562 (10th Cir. 1992), and *United States v. Hildebrand*, 152 F.3d 756 (8th Cir. 1998), to support his argument that the district court should have considered only $23,000 when sentencing him under § 2S1.1. Contrary to Landerman's assertion, nothing in *Tansley* compels the conclusion that a court sentencing a defendant under the money laundering guideline may consider *only* money that the defendant laundered or that he himself was "reasonably capable" of laundering. Furthermore, in *United States v. Leonard*, 61 F.3d 1181 (5th Cir. 1995), this Court distinguished *Johnson* and its kin from cases in which, as here, the money laundered was reinvested into and perpetuated the fraudulent activity. Although *Hildebrand* counsels against grouping fraud with money laundering,[3] Landerman cannot escape the precedent set by this

_____

the district court's factual finding that the conspirators laundered virtually all of the $6.1 million was not clearly erroneous, *see Sarasti*, 869 F.2d at 806, and we will not disturb it on appeal.

[3]We also note that, whatever its reasoning as to grouping, *Hildebrand* would nonetheless support Landerman's sentence under the § 1B1.3 reasoning. "Of course, if a sentencing court finds that all fraud proceeds were laundered, then the amount of fraud loss and the value of money laundered will be the same for sentencing purposes." *Hildebrand*, 152 F.3d at 763 n.2.

Court in *Leonard*, which explicitly would allow grouping.[4]

B

Landerman next complains that the district court abused its discretion and denied him due process when it denied his motion for a downward departure pursuant to Sentencing Guideline § 5K2.0. We have jurisdiction to review a district court's decision not to depart downward from the guideline range only if the district court based its decision upon an erroneous belief that it lacked the authority to depart. *See United States v. DiMarco*, 46 F.3d 476, 478 (5th Cir. 1995). Moreover, something in the record must indicate that the district court held such an erroneous belief. *See United States v. Willey*, 57 F.3d 1374, 1392 n.32 (5th Cir. 1995). Nothing so indicates here. To the contrary, the district court indicated at sentencing that it could, but that it refused to, grant Landerman the downward departure he requested. Accordingly, Landerman's appeal of this issue is dismissed for lack of jurisdiction.

C

In a supplemental brief before this Court, Landerman argues that the district court abused its discretion by ordering him to

_____

[4]We also note and reject Landerman's assertion that his sentence violates his constitutional right to due process. *See United States v. Lopez*, 923 F.2d 47, 50-51 (5th Cir. 1991) ("[T]he error asserted, involving as it does the technical application of a single guideline, is far from an obviously constitutional one.").

pay a $10,000 fine. Because Landerman did not challenge the imposition of the fine before the district court, we review for plain error only. *See United States v. Maldonado*, 42 F.3d 906, 909-12 (5th Cir. 1995).

The Sentencing Guidelines require a defendant to prove his inability to pay a fine. *See United States v. Fair*, 979 F.2d 1037, 1041 (5th Cir. 1992). The defendant may rely on the presentence report in order to establish his inability to pay the fine. *See id.* If a district court chooses to disregard the presentence report recommendation, it must make specific findings regarding the defendant's ability to pay a fine. *See id.* Landerman's presentence report states, "It does not appear the defendant has the financial resources or future earning capacity to pay a fine within the guideline range [$15,000 to $150,000]." The report, however, further advises: "Subject to the defendant's ability to pay, the Court shall impose [a] fine amount that is at least sufficient to pay the cost to the government of any imprisonment, probation or supervised release ordered, unless the Court finds it is clearly unreasonable to do so." The report also contains evidence that indicates that Landerman might be able to pay a lesser fine, i.e., that Landerman and his wife have a net monthly cash flow of $387. Without making additional specific findings concerning Landerman's ability to pay, the district court imposed a fine of $10,000, without interest, payable in

$300 monthly installments beginning sixty days after Landerman is released on supervision. In imposing this fine, which is considerably below the Guideline range, the district court did not depart from the presentence report. Therefore, we see no plain error and uphold the imposition of the fine.

D

For the foregoing reasons, we DISMISS Landerman's appeal of the district court's refusal to grant the requested downward departure from the Sentencing Guidelines. In all other respects, we AFFIRM Landerman's sentence.