IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

_____

No. 98-20913
Summary Calendar

_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

WILLIAM GLENN MITCHELL,

Defendant-Appellant.

- - - - - - - - - -
Appeal from the United States District Court
for the Southern District of Texas
(H-98-CV-2815 & H-89-CR-175-31)
- - - - - - - - - -

_____

No. 01-20161
Summary Calendar

_____

IN RE: WILLIAM GLENN MITCHELL,

Petitioner.

------------------

On Petition for Writ of Mandamus to the United States
District for the Southern District of Texas
(H-89-CR-175-31)
-------------------
June 12, 2001

Before SMITH, BENAVIDES, and DENNIS, Circuit Judges.

1

PER CURIAM:[*]

Before this court is William Glenn Mitchell's application for a certificate of appealability in cause number 98-20913. Also before this court is his petition for writ of mandamus in cause number 01-20161. On August 25, 1998, Mitchell, with assistance from an attorney, filed a lengthy 28 U.S.C. § 2255 motion to vacate, set aside, or correct his sentence. The district court issued an order summarily denying the motion "on the face of the record" without issuing findings of fact or conclusions of law. Mitchell timely appealed. The district court construed Mitchell's notice of appeal as a request for a COA, and because Mitchell had failed to isolate any particular constitutional issues, the court denied Mitchell a COA.[1]

Mitchell requested a COA from this court. On July 14, 1999, this court granted a COA for the sole purpose of a limited remand to the district court for entry of reasons for its denial of Mitchell's § 2255 motion. Because the district court had not complied with our remand order, Mitchell filed, on March 2, 2000, a motion to expedite the district court's ruling. On October 23, 2000, because the district court had yet to comply with our remand order, Mitchell filed a motion for release pending the disposition of his § 2255 motion. No action was taken by the district court.

On February 13, 2001, Mitchell filed a petition for a writ of mandamus in this court

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

[1] Through counsel, Mitchell moved to reconsider the issuance of a COA and requested an enlargement of time in which to request COA. Counsel explained that she had filed the notice of appeal for Mitchell in an abundance of caution but that she had not been retained to appeal the court's dismissal and had not been able to communicate with Mitchell to determine what issues that he wished to appeal. The district court denied the motion because Mitchell had yet to make a showing of the denial of a constitutional right.

complaining of the district court's failure to comply with our remand order and alternatively asking that the case be assigned to another district judge. Mitchell also requested release pending the disposition of his § 2255 motion. This court requested a response from the district court. In its response, the district court opined that this court's remand for findings is inconsistent with Rule 4(b) of the Rules Governing Section 2255 Proceedings.[2] We have expressly concluded otherwise. Hart v. United States, 565 F.2d 360, 362 (5th Cir. 1978). See also United States v. Counts, 691 F.2d 348, 349 (7th Cir. 1982) (stating that the "preferred practice in dismissing a section 2255 motion in accordance with Rule 4(b) is to enumerate the issues raised by the movant, specify that each is being summarily dismissed in accordance with the rule, and explain the legal grounds for that action").

We underst and the heavy burden and large dockets the district courts have in this Circuit; however, when requested, district courts must assist in the process according to our precedent. Nonetheless, in response to our request, Judge Hughes did provide the rationale for his ruling. Based on that rationale, we are able to perform an appellate review with respect to Mitchell's request for a COA.

A COA may be issued only if the prisoner has made a "substantial showing of the denial of a constitutional right." See 28 U.S.C. § 2253(c)(2). Mitchell must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong. Slack v. McDaniel, 529 U.S. 473, 483-84 (2000).

---

[2] In pertinent part, Rule 4(b) provides as follows:
The [§ 2255] motion, together with all the files, records, transcripts, and correspondence relating to the judgment under attack, shall be examined promptly by the judge to whom it is assigned. If it plainly appears from the face of the motion and any annexed exhibits and the prior proceedings in the case that the movant is not entitled to relief in the district court, the judge shall make an order for its summary dismissal and cause the movant to be notified.

3

Mitchell argues that the district court erred in concluding that he had knowingly and voluntarily waived his right to appeal. Mitchell takes issue with the following language in the plea agreement:

> 8.     The defendant understands that the sentence to be imposed is within the discretion of the sentencing judge. If the Court should impose any sentence up to the maximum established by statute, the defendant cannot, for that reason alone, withdraw a guilty plea or appeal and will remain bound to fulfill all of the obligations under this plea agreement.

> 9.     The defendant is aware that the defendant's sentence will be imposed in accordance with the Sentencing Guidelines and Policy Statements. The defendant nonetheless acknowledges and agrees that the Court has jurisdiction and authority to impose any sentence within the statutory maximum set for the offense(s) to which the defendant pleads guilty. . . .

Mitchell relies upon the Second Circuit's decisions in United States v. Rosa, 123 F.3d 94, 99 (2d Cir. 1997), and United States v. Martinez-Rios, 143 F.3d 662, 668 (2d Cir. 1998), in which the Second Circuit had viewed similar appeal waiver language as an unorthodox arrangement that presented grave dangers and implicated both constitutional questions and ordinary principles of fairness and justice. Mitchell requests that the appeal waiver not be enforced and that he be allowed to challenge his sentence.   Although the Second Circuit expressed some concerns about the language, the court nevertheless held that the language in the waiver was not facially invalid. See, e.g., Rosa, 123 F.3d at 101. More importantly, the language of Mitchell's appeal waiver (specifically, that the waiver did not specify an acceptable sentencing range) is standard in this circuit. See, e.g., United States v. Robinson, 187 F.3d 516, 517 (5th Cir. 1999) (waiving right of appeal on any ground except an upward departure); United States v. Kelly, 974 F.2d 22, 23 (5th Cir. 1992) (same). This court has rejected the contention that appeal waivers were to be approved only when the plea agreement contained a specific sentence. Kelly, 974 F.2d at 23-24.

4

Additionally, Mitchell argues that his attorney was ineffective for allowing him to agree to plead "blind" to his sentence under the guidelines. He does not, however, wish to withdraw his guilty plea. To prevail on a claim of ineffective assistance of counsel, a defendant must show: (1) that his counsel's performance was deficient in that it fell below an objective standard of reasonableness; and (2) that the deficient performance prejudiced his defense. Strickland v. Washington, 466 U.S. 668, 689-94 (1984). To demonstrate prejudice in the guilty-plea context, a defendant must show there is a reasonable probability that he would have insisted on going to trial but for counsel's errors. Mangum v. Hargett, 67 F.3d 80, 84 (5th Cir. 1995).

In addition to the language challenged by Mitchell, the plea agreement also provided that Mitchell knowingly waived his right to appeal, recognizing the uncertainty in estimating his actual sentence, "in exchange for the concessions made by the United States in this plea agreement." The Government had agreed, inter alia, to dismiss counts 1, 42, and 88 of the instant indictment and any other indictments against him in another matter.

Mitchell has failed to show that his counsel's performance was deficient. Nor has Mitchell shown any prejudice as he does not want to withdraw his guilty plea and proceed to trial.

Mitchell also argues that the district court failed to ensure that he knew the value of the right to appeal. He therefore argues that his waiver was neither knowing or voluntary. A defendant may waive his right to appeal, but the waiver must be informed and voluntary. United States v. Wilkes, 20 F.3d 651, 653 (5th Cir. 1994). The defendant must know that he had a right to appeal and that he was relinquishing that right. United States v. Portillo, 18 F.3d 290, 292 (5th Cir. 1994). When the record clearly shows that the defendant read and understood the plea agreement and that he raised no question regarding the waiver-of-appeal provision, the plea agreement is upheld. Id. at 292-93.

5

The record reflects that the case had been appealed twice before Mitchell pleaded guilty, that the district court specifically noted that Mitchell was waiving his right to appeal his sentence in the plea agreement, and that Mitchell indicated that he understood that he was substantially giving up his right to appeal his sentence.[3] Mitchell's sworn declarations in open court carry a strong presumption of verity. See Blackledge v. Allison, 431 U.S. 63, 74 (1977). Mitchell has failed to rebut this

---

[3] Mitchell signed the plea agreement as well as a statement at the end of the plea agreement in which Mitchell attested to the following:

> I have consulted with my counsel and fully understand all my rights with respect to the information pending against me. Further, I have consulted with my attorney and fully understand my rights with respect to the provisions of the Sentencing Guidelines and Policy Statements which may apply in my case. I have read this plea agreement and carefully reviewed every part of it with my attorney. I understand this agreement and I voluntarily agree to it.

Mitchell's attorney also signed a statement at the end of the plea agreement attesting that he had "fully explained" to Mitchell his rights with respect to the pending information and that he had "carefully reviewed every part of this plea agreement" with Mitchell.

At the rearraignment, Mitchell answered yes when asked if he had had an opportunity to discuss everything about the case with his attorney. Mitchell added that it had "been very satisfactory" and had "been in great length." Mitchell confirmed that no one had threatened or forced him to plead guilty and that he had signed the plea agreement. The court admonished Mitchell that his sentence was uncertain and that he could be sentenced up to the statutory maximum life sentence. Mitchell stated that he understood. The court also asked if there was anything in the plea agreement about appeal, and the Government's attorney answered, "The standard language about waiving the right to appeal, Judge." The court then asked Mitchell: "All right, do you understand you have a right to appeal? Apparently, part of your deal with the government is you've given up substantially that right? Do you all swear to the plea agreement?" Mitchell answered, "Yes, sir."

At sentencing, the court recalled that Mitchell had waived his right to appeal. Mitchell's attorney agreed and confirmed that he had discussed the right to appeal with Mitchell when "we did the plea." Mitchell's attorney, who had not been Mitchell's initial attorney, stated that Mitchell was familiar with appeals by the time that he had been appointed to represent Mitchell.

For a period of time prior to pleading guilty, Mitchell had represented himself (with the assistance of standby counsel). In fact, Mitchell pursued an interlocutory appeal from the district court's denial of his motions to dismiss counts 1 and 41 of the indictment on double jeopardy grounds and his motion to bar racketeering acts 1A and 37 as racketeering acts in count 42 of the indictment. The Government also successfully appealed a pretrial ruling by the district court. United States v. Martinez, 87 F.3d 731 (5th Cir. 1996).

presumption.  Thus, he has not shown that his waiver of appeal was unknowing or involuntary.

Mitchell next argues that his counsel was ineffective for failing to (1) request a minor role reduction, (2) challenge the imposition of a fine, and (3) challenge the use of testimony obtained in violation of 18 U.S.C. § 201(c)(2).  In reviewing a district court's denial of a § 2255 motion, this court examines the factual findings for clear error and conclusions of law de novo.  United States v. Faubion, 19 F.3d 226, 228 (5th Cir. 1994).  We review mixed questions of fact and law such as ineffective-assistance-of-counsel claims de novo.  Id.

Section 3B1.2 mandates that a defendant's sentence must be reduced by two levels if he was "a minor participant in any criminal activity."  See U.S.S.G. § 3B1.2(b).  "[A] minor participant means any participant who is less culpable than most other participants, but whose role could not be described as minimal."  Id., comment. (n.3).  The fact that codefendants were more culpable, however, does not automatically qualify a defendant for a minor role reduction.  United States v. Atanda, 60 F.3d 196, 198 n.1 (5th Cir. 1995).  Rather, such an adjustment is appropriate only for "a defendant [who] was substantially less culpable than the average participant."  Id.  "[W]hen a sentence is based on an activity in which a defendant was actually involved, § 3B1.2 does not require a reduction in the base offense level even though the defendant's activity in a larger conspiracy may have been minor or minimal."  Id. at 199.  A defendant bears the burden of proving his minor role by a preponderance of the evidence.  United States v. Zuniga, 18 F.3d 1254, 1261 (5th Cir. 1994).

Mitchell's base offense level was derived solely from his own personal conduct in the conspiracy.  Furthermore, Mitchell's attorney requested a downward departure on the basis of Mitchell's relative culpability at sentencing, which the court denied.  Because Mitchell's sentence was based only on the activity in which he was actually involved and the court denied a downward

7

departure on the basis of his relative culpability, Mitchell has failed to show that he was entitled to a minor role adjustment and, thus, that his counsel was ineffective for failing to seek the reduction.

Mitchell argues that his attorney was ineffective for failing to challenge the district court's imposition of a fine. He submits that he is indigent and notes that he was a fugitive from justice for several years without regular employment. He argues that reliance upon the PSR was not a sufficient basis for the court to impose a fine given that the PSR did not make a specific recommendation as to the payment of a fine and the Government did not submit any additional evidence of his ability to pay.

The Sentencing Guidelines provide that the "court shall impose a fine in all cases, except where the defendant establishes that he is unable to pay and is not likely to become able to pay any fine." U.S.S.G. § 5E1.2(a); see United States v. Martinez, 151 F.3d 384, 395-96 (5th Cir. 1998). A defendant bears the burden of proving his inability to pay a fine. United States v. Landerman, 167 F.3d 895, 899 (5th Cir. 1999). "The defendant may rely on the presentence report in order to establish his inability to pay the fine." Id. However, even if the district court determines that the defendant is unable to pay the fine, it may impose a fine. United States v. Hodges, 110 F.3d 250, 251-52 (5th Cir. 1997) (applying United States v. Altamirano, 11 F.3d 52, 54 (5th Cir. 1993) (neither federal sentencing guidelines nor the Constitution categorically prohibit the imposition of a fine when the defendant is indigent)).

According to the PSR, Mitchell reported that he had no assets or liabilities. Mitchell stated that he had maintained employment whenever he was not incarcerated. Mitchell had worked for Alltech Satellite and Communication from August 1987 until his arrest in February 1992. At the time of his arrest, he was working full-time in management.

The PSR determined that the applicable guidelines range for a fine was $20,000 to $2,800,000. The PSR did not make any findings with regard to Mitchell's ability to pay. At sentencing, the district court did not make any specific findings regarding Mitchell's ability to pay, but it imposed a fine at the bottom of the guideline range and granted Mitchell's request to waive the interest on the fine.

Mitchell has provided no evidence that he will be unable to pay the fine over time. Although the PSR stated that he had no assets, it similarly found no liabilities, and it did not conclude that Mitchell was financially unable or would become unable to pay a fine in the future. Because the PSR made no recommendation regarding the fine, the district court was not required to make any specific findings regarding Mitchell's ability to pay. See Landerman, 167 F.3d at 899. Mitchell therefore has failed to demonstrate that his counsel was ineffective for failing to challenge the imposition of the fine. See Sones v. Hargett, 61 F.3d 410, 415 n.5 (5th Cir. 1995) (counsel is not deficient for failing to argue a meritless point).

Mitchell next argues that the district court erred in relying upon statements of his coconspirators in calculating his sentencing level. He argues that the PSR was an insufficient basis for supporting the Government's preponderance of the evidence burden for this sentencing claim. Mitchell's claim that his sentence was incorrectly calculated under the guidelines is not cognizable in a § 2255 motion. See United States v. Segler, 37 F.3d 1131, 1134 (5th Cir. 1994).[4]

---

[4] Mitchell argues that his attorney was ineffective for failing to challenge the Government's violation of 18 U.S.C. § 201(c)(2) based upon the Government's use of certain statements by two codefendant (and coconspirators) which had been obtained by the Government for something of value.

Section 201(c)(3) prohibits a witness from receiving, directly or indirectly, anything of value in exchange for their testimony. 18 U.S.C. § 201(c)(2). Section 201, however, does not prohibit a prosecutor from making promises of leniency in exchange for a witness's testimony. See United

Finally, Mitchell argues, without citation to any authority, that the Double Jeopardy Clause precluded the Government from prosecuting him under the 1990 RICO indictment on the basis of the 1977 Oklahoma marijuana distribution conspiracy and the 1983 Tennessee marijuana distribution conspiracy as the Government could have pursued the RICO charges in 1983. He argues that he has been placed in jeopardy twice for the same offense. He contends that the Government should have brought the RICO charge in 1983 as the Government had the necessary evidence to bring the RICO charge at that time. He asserts, without citation to any authority, that he has not waived this defense.

To the extent that Mitchell raised this claim in his interlocutory appeal and this court disposed of the issue, it may not be considered in Mitchell's § 2255 motion. See United States v. Kalish, 780 F.2d 506, 508 (5th Cir. 1986) ("[I]ssues raised and disposed of in a previous appeal from an original judgment of conviction are not considered in § 2255 [m]otions.").

In any event, Mitchell offers no legal authority in his COA brief in support of his claim that the Government could not bring a RICO charge based upon the prior, lesser included, offenses (the 1977 and 1983 conspiracies). This court has "long held that the government may first prosecute a defendant for the predicate acts which form the basis of a RICO charge – including conspiracy charges - and subsequently prosecute him for a substantive violation of RICO under 18 U.S.C. § 1962(c)." United States v. Deshaw, 974 F.2d 667, 671 (5th Cir. 1992). Absent legal authority to support his contrary position, Mitchell has failed to demonstrate that the issue "deserve[s]

States v. Haese, 162 F.3d 359, 366-68 (5th Cir. 1998). Mitchell concedes that his claim is likely moot in light of Haese, but he nevertheless raises the issue to preserve it for possible Supreme Court review. Because Mitchell's claims of § 201(c) violations lack merit in light of Haese, his counsel was not deficient for failing to argue that such violations occurred. See Sones, 61 F.3d at 415 n.5.

encouragement to proceed further." <u>Slack</u>, 529 U.S. at 484 (internal quotation and citation omitted).[5]

Because we DENY Mitchell's request for a COA, we DISMISS his application for mandamus as moot. COA DENIED; MANDAMUS APPLICATION DISMISSED.

---

[5] Mitchell argues that the district court erred in deciding his case without holding an evidentiary hearing on his ineffective assistance of counsel claims. As discussed above, the record conclusively shows that Mitchell is not entitled to relief on those claims. Accordingly, the district court did not abuse is discretion in denying the § 2255 motion without holding an evidentiary hearing. <u>United States v. Bartholomew</u>, 974 F.2d 39, 41 (5th Cir. 1992).