**UNITED STATES COURT OF APPEALS**
**For the Fifth Circuit**

_____

No. 01-20591
_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

VERSUS

ROBERT SWANSON,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Texas
(99-CR-630)
_____

December 3, 2002

Before HIGGINBOTHAM, DUHÉ, and DeMOSS, Circuit Judges.

PER CURIUM:[*]

## BACKGROUND

On January 5, 2000, Robert Swanson ("Swanson") and Marcial Rivera ("Rivera") were charged by a fourteen-count superseding indictment with conspiracy to launder monetary instruments, in violation of 18 U.S.C. § 1956(h) (count 1); aiding and abetting

---

[*] Pursuant to 5th Cir. R. 47.5, the Court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5th Cir. R. 47.5.4.

wire fraud, in violation of 18 U.S.C. §§ 2, 1343 (counts 2-8); and aiding and abetting money laundering, in violation of 18 U.S.C. §§ 2, 1956(a)(1)(A)(I) (count 9). Swanson was also charged individually with trafficking in counterfeit goods, in violation of 18 U.S.C. § 2320(a) (counts 10-13).[1]

With respect to wire fraud, the superseding indictment alleged that Swanson and Rivera submitted fraudulent credit card charges from the Watch Shop, a jewelry store Swanson operated in Houston, Texas, to EFS and Nova, both credit card processing companies in Tennessee. With respect to money laundering, the superseding indictment alleged that Swanson and Rivera withdrew $850 from a Watch Shop bank account in an effort to promote the wire fraud. With respect to trafficking in counterfeit goods, the superseding indictment alleged that Swanson had counterfeit Rolex watches which the government seized at the Watch Shop. Additional relevant facts as established at trial are outlined in the discussion section for each issue on appeal.

On January 31, 2000, after an eight-day jury trial, the jury found Swanson guilty of all counts except one count of trafficking in counterfeit goods.[2] After granting several continuances, on May

---

[1] Rivera was individually charged with threatening to retaliate against a government informant, in violation of 18 U.S.C. § 1513(b)(2) (count 14).

[2] The jury convicted Rivera of all counts except the retaliation count and this conviction was upheld by another panel of this Court in *United States v. Rivera*, 295 F.3d 461 (5th Cir. 2002), despite Rivera's claim that there was insufficient evidence

25, 2001, the district court sentenced Swanson to eighty-seven months in the custody of the Bureau of Prisons, followed by three years of supervised release, and the court imposed a $10,000 fine, $500 in restitution, and a special assessment of $1,200. Swanson did not object to the fine. On January 29, 2002, the district court ordered destruction of the counterfeit Rolex watches seized at the Watch Shop.

Swanson now challenges the sufficiency of the evidence on the seven counts of aiding and abetting wire fraud and the one count of aiding and abetting money laundering. He also argues that the district court abused its discretion in denying his motion to continue the sentencing for six months until a proposed, new money laundering guideline became effective and in ordering the destruction of counterfeit Rolex watches. Finally, he argues that the district court committed plain error by imposing a $10,000 fine.

## DISCUSSION

*Whether the evidence is sufficient to support Swanson's conviction for aiding and abetting wire fraud.*

When evaluating a challenge to the sufficiency of the evidence, we view the evidence in the light most favorable to the verdict and will uphold the verdict if a rational juror could have found each element of the charged offense beyond a reasonable

---

to support a conviction for aiding and abetting wire fraud or a conviction for aiding and abetting money laundering.

3

doubt. *United States v. McCauley,* 253 F.3d 815, 818 (5th Cir. 2001). The review is *de novo*, and "[i]f 'the evidence viewed in the light most favorable to the prosecution gives equal or nearly equal circumstantial support to a theory of guilt and a theory of innocence,' a defendant is entitled to a judgment of acquittal." *United States v. Brown,* 186 F.3d 661, 664 (5th Cir. 1999) (quoting *United States v. Schuchmann,* 84 F.3d 752, 754 (5th Cir. 1996)). The same standard is applied equally to direct evidence and circumstantial evidence. *United States v. Mergerson*, 4 F.3d 337, 341 (5th Cir. 1993). Finally, the evidence is viewed as a whole rather than each circumstance in isolation. *United States v. Duncan*, 919 F.2d 981, 990 (5th Cir. 1991).

To prove aiding and abetting, the government has to prove that Swanson associated with a criminal venture and that he shared the same requisite criminal intent as the principal. *United States v. Isomoila*, 100 F.3d 380, 387 (5th Cir. 1997). A defendant associates himself with a criminal venture if he engages in some affirmative conduct designed to aid the venture. *United States v. Delgado*, 256 F.3d 264, 276 (5th Cir. 2001) (citation omitted). Wire fraud requires "specific intent to defraud or deceive, although proof of such intent can arise 'by inference from all of the facts and circumstances surrounding the transactions.'" *Ismoila*, 100 F.3d at 387 (citations omitted).

At trial, and not challenged on appeal, the government proved

4

that the credit cards were stolen, that a Watch Shop merchant obtained approval for the charges via wire signals, and that payments were made to the Watch Shop via wire transfers. On appeal, Swanson contends only that he did not know the credit cards had been stolen because it is common practice for credit card holders to give permission to third parties to use their credit cards even though most credit card issuers prohibit this.

At trial, there was substantial evidence that Swanson knew the cards involved in the first four counts of wire fraud were stolen. There was evidence from Ramirez, a Watch Shop employee, that individuals supplied stolen credit cards to Swanson as often as once or twice a week. There was evidence that Swanson purposely double-billed credit cards, had individuals sign blank drafts and then submitted charges without permission, and kept blank credit card drafts with forged signatures on them in the Watch Shop. There was also testimony that EFS spoke to "Robert," and the jury could reasonable infer that "Robert" was Swanson, regarding the fraudulent charges. In fact, Swanson sent EFS documentation to support a fraudulent charge, claiming that he had forgotten to have the customer sign the receipt when the alleged customer had never been in the Watch Shop.

Additionally, three counts of wire fraud involved fraudulent charges at the Watch Shop as part of an undercover operation. Using a government informant, credit cards were brought to Swanson on two occasions, Swanson was told that the cards were stolen but

5

he or someone else with his assistance submitted charges on the cards anyway. The interaction between the informant and Swanson was recorded and the recording was corroborated by a police officer at trial who had listened to the transactions as they occurred. At trial, the jury was cautioned that they were free to disregard the testimony of the government informant if they found it untruthful.

The jury could at least infer from the evidence as a whole, Swanson knew the cards were stolen and therefore had the specific intent required to be convicted of aiding and abetting wire fraud. Accordingly, a rational juror could have found each element of the charge: that Swanson associated with a criminal venture and had the required intent. Therefore, the evidence is sufficient to support Swanson's conviction.

*Whether the evidence is sufficient to support Swanson's conviction for aiding and abetting money laundering.*

The standard of review for a challenge to the sufficiency of the evidence for a conviction for aiding and abetting money laundering is the same as the standard applied above. Additionally, the elements of aiding and abetting, that Swanson associated with a criminal venture and had the required intent, are the same as above. For money laundering, the government must prove specific intent to promote the carrying on of the specified illegal activity, which in this case is wire fraud. ***United States v. Brown***, 186 F.3d 661, 670 (5th Cir. 1999).

Again, Swanson's only claim on appeal is that there was no

wire fraud because the government did not prove that he knew the cards were stolen and, therefore, there can be no money laundering. Swanson also seems to argue that there was not a sufficient link between the use of money and the wire fraud to prove that the money was used to promote the illegal activity and, therefore, he could not be convicted of aiding and abetting money laundering.

The evidence outlined above is relevant to this issue and indicates a rational juror could have found that Swanson knew the cards were stolen and therefore had the specific intent necessary for wire fraud. Consequently his activities in promotion of the wire fraud, such as paying money to individuals that brought him stolen credit cards, constituted aiding and abetting money laundering.

Furthermore, the government also proved Swanson made efforts to pay the government informant from the proceeds of wire fraud and this established a link between the use of the funds and promotion of the illegal activity. At trial, the government proved that the informant had sought payment from Swanson for brining Swanson stolen credit cards, that Swanson made the informant wait until the credit card processing companies had transferred funds to one of the Watch Shop accounts, after the money was in the account Swanson instructed someone over the phone to withdraw funds in order to pay a person he had a deal with, money was withdrawn from the account, Swanson then paid the informant an amount that they agreed to after Swanson deducted the credit card processing fees and taxes. The

7

government argued that this use of funds was to promote the activity so the informant would continue to assist Swanson in committing wire fraud.

Based on this evidence, a rational juror could have found that Swanson associated with the criminal venture and had the required intent because he was trying to promote the illegal activity through using the wire fraud proceeds. Accordingly, the evidence is sufficient to support Swanson's conviction for aiding and abetting wire fraud.

*Whether the district court abused its discretion in denying a continuance of the sentencing until after a proposed amendment to the money laundering guideline would have become effective.*

We review the denial of a continuance of a sentencing hearing for an abuse of discretion. **United States v. Peden**, 891 F.2d 514, 519 (5th Cir. 1989).

The jury convicted Swanson on January 31, 2000. Although Swanson's sentencing was originally scheduled for May 19, 2000, he was sentenced one year later on May 25, 2001, because several continuances had been granted. On May 23, 2001, Swanson filed a motion to continue the sentencing hearing until November 2001. The reason for the motion was that on May 1, 2001, the United States Sentencing Commission had submitted to Congress amendments to the Sentencing Guidelines that would have made Swanson's earlier motions for a downward departure moot due to the fact that the amendments, if they became effective, would potentially reduce the

8

sentence for money laundering in a case like Swanson's.

There is no case law to support Swanson's contention that a district court abuses its discretion when it denies a continuance to a defendant who could benefit from a proposed guideline. *See* **United States v. Smith**, 200 WL 1042654 (E.D. La. July 25, 2000) (denying a motion for continuance because amendments are not guaranteed to become effective). Furthermore, a ruling for Swanson, would require attorneys to move for and the courts to grant "continuances in a substantial number of cases scheduled for sentencing between May and November, where a proposed guideline might affect the result." **United States v. Flores-Ochoa**, 139 F.3d 1022, 1024 (5th Cir. 1998). Therefore, the district court did not abuse its discretion in denying Swanson's motion for continuance.

*Whether the district court abused its discretion in ordering the destruction of counterfeit Rolex watches without affording Swanson a hearing.*

We review for abuse of discretion the district court's denial of a motion without an evidentiary hearing. **United States v. Runyan**, 290 F.3d 223, 247-48 (5th Cir. 2002). Swanson cites no case law in support of his argument.

On May 10, 2000, Swanson filed a *pro se* motion for return of the property seized at the Watch Shop, contending that a large portion of the items were not counterfeit. The government sought permission to destroy the counterfeit watches and return all other property that was not the proceeds of illegality to the rightful

9

owners.  Swanson responded to the governments motion claiming he did not own the watches.  On July 14, 2000, the court ordered a hearing to be schedule at a later date to determine the rightful owners of the seized watches.  On July 23, 2001, in a written order, the district court found that Swanson had abandoned his claim to any of the watches and denied his motion for return of the watches.  On August 31, 2001, the government filed a motion to destroy the seized watches and attached an affidavit from a Rolex vice president that listed why each watch was counterfeit.  On January 29, 2002, the court ordered the destruction of the counterfeit watches.

The district court found that Swanson waived his request for a hearing by abandoning an ownership interest in the watches and Swanson does not seem to challenge this finding.  Furthermore, pursuant to 18 U.S.C. §2320(b), the government proved by a preponderance of the evidence that the watches were counterfeit and therefore could be destroyed.  Therefore, there was no abuse of discretion.

*Whether the district court plainly erred in imposing a $10,000 fine.*

Swanson did not challenge the imposition of the fine in district court and, therefore, we review for plain error. ***United States v. Landerman***, 167 F.3d 895, 899 (5th Cir. 1999).  The Sentencing Guidelines require the imposition of a fine in every criminal case, unless the defendant establishes that he does not

10

have the ability to pay a fine.  U.S.S.G. § 5E1.2(a).  Because the total offense level was 23, the minimum fine was $10,000, which the district court imposed.  U.S.S.G. § 5E1.2(c)(3).

Swanson refused to provide financial information and, therefore, the financial section of the Pre-Sentencing Report ("PSR") for this case relied on a previous PSR prepared in 1999 in connection with Swanson's previous federal bank fraud conviction. The previous PSR did not indicate Swanson was unable to pay the fine and only now, on appeal, does Swanson claim the information was outdated.  Swanson has never shown an inability to pay and, accordingly, the district court did not error.

## CONCLUSION

Having carefully reviewed the record of this case, the parties' respective briefing and arguments, and for the reasons set forth above we conclude that there was sufficient evidence to convict Swanson and the district court correctly decided all the issues appealed.  Therefore, we AFFIRM.

**AFFIRMED.**