United States Court of Appeals
Fifth Circuit

**F I L E D**

**June 6, 2007**

Charles R. Fulbruge III
Clerk

**IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT**

_____

No. 05-11467

_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

DANIEL A. FISHER,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Northern District of Texas
3:04-CR-172-1

_____

Before HIGGINBOTHAM, WIENER, and CLEMENT, Circuit Judges.

EDITH BROWN CLEMENT, Circuit Judge:[*]

Daniel Fisher was charged with thirty-four counts of aiding and assisting in the filing of

fraudulent tax returns in violation of 26 U.S.C. § 7206(2), one count of making a false statement to

a bank in violation of 18 U.S.C. § 1014, one count of bank fraud in violation of 18 U.S.C. § 1344,

and one count of making a false statement before a court in violation of 18 U.S.C. § 1623. A jury

convicted him on all counts. For the reasons that follow, we affirm.

_____

[*]Pursuant to 5th Cir. R. 47.5, the court has determined that this opinion should not be published and
is not precedent except under the limited circumstances set forth in 5th Cir. R. 47.5.4.

1

## I. FACTS AND PROCEEDINGS

Beginning in 2001, Fisher ran a business offering wealth management and financial planning services to clients. His wife assisted him. The business included tax liability reduction plans, and Fisher's participation in the business's tax liability reduction component formed the basis for the thirty-four counts of aiding and assisting in the filing of fraudulent tax returns.

In January 2004, prior to the criminal trial, the district court issued a permanent injunction that barred Fisher and his wife from preparing tax returns and also required them to inform their customers about the injunction. In March, the district court found Fisher in violation of the injunction and guilty of civil contempt, and the district court ordered Fisher incarcerated. During a subsequent hearing related to his motion for release from prison, Fisher gave testimony that formed the basis for the count charging him with making a false statement before a court. In March and April of 2004, Fisher and his wife submitted tax returns to Wells Fargo Bank in connection with a loan application. Because the tax returns had not been filed with the IRS and the tax liability presented on the returns had never been paid, the submission of the returns to the bank constituted making false statements to the bank and bank fraud.

The trial was held in November 2004. Among the witnesses were several of Fisher's clients, members of his staff, and IRS agents. The evidence showed that the tax scheme that Fisher and his wife promoted involved creating partnerships or corporations to which the clients' income was assigned. The evidence also showed that most of the income assigned to the partnerships or corporations was then reduced on the entities' tax returns by improper deductions. The result of the tax scheme was that the clients paid little or no tax on their income.

A jury convicted Fisher on all counts. The jury also returned a special verdict, finding the

actual and intended tax loss to the government to be over $7 million.[1]  The district court determined the sentencing guidelines range to be between 188 and 235 months imprisonment and sentenced Fisher to 235 months imprisonment and five years of supervised release.  The court also imposed on Fisher a $1 million fine.

Fisher timely appealed, alleging four points of error: (1) that the testimony of expert witness Sandy Abalos was erroneously admitted, in violation of FED. R. EVID. 704; (2) that the evidence was insufficient to support Fisher's conviction for making a false declaration before a court; (3) that the finding of tax loss in excess of $7 million was clear error; and (4) that the district court's imposition of a $1 million fine was unreasonable.

## II.  DISCUSSION

### A.  Testimony of Sandy Abalos

Evidentiary rulings are reviewed for abuse of discretion.  *United States v. Gutierrez-Farias*, 294 F.3d 657, 662 (5th Cir. 2002).  They are also subject to harmless error review.  *See United States v. Williams*, 343 F.3d 423, 434 (5th Cir. 2003).  Though the government disputes whether this issue was preserved for appeal, the record shows that the nature of the defendant's objection at trial was clear from the context and thereby preserved.

Among the individuals to whom Fisher marketed his tax scheme was Joe Polish. Polish retained Abalos, a Certified Public Accountant, to review the scheme and advise him of its propriety. As part of her review, Abalos met with Fisher and Polish in person to discuss it.  Abalos testified at trial that Fisher appeared concerned when she suggested that the IRS review his scheme.  She later testified that, in her professional opinion, Fisher knew that what he was doing was wrong:

---

[1]The trial took place before *Booker*, when sentencing facts were often presented to the jury.

3

Abalos: In my opinion, I completely believed that Dan Fisher knew what he was doing.

Defense counsel: Your Honor, I object to this, it's her speculating to the mental processes of Dan Fisher.

Court: That is overruled.

\*\*\*\*

Abalos: These are my observations and my personal professional opinion. I do believe that he knew.

The parties dispute whether Abalos's testimony violated FED. R. EVID. 704. Fisher argues that it violated subpart (b), and the government argues that the testimony was appropriate under subpart (a). Under the rule,

> (a) Except as provided in subdivision (b), testimony in the form of an opinion or inference otherwise admissible is not objectionable because it embraces an ultimate issue to be decided by the trier of fact.

> (b) No expert witness testifying with respect to the mental state or condition of a defendant in a criminal case may state an opinion or inference as to whether the defendant did or did not have the mental state or condition constituting an element of the crime charged or of a defense thereto. Such ultimate issues are matters for the trier of fact alone.

FED. R. EVID. 704.

**(1) Admission of testimony under Rule 704**

Fisher was convicted of aiding in the preparation of fraudulent tax returns, and the statute of conviction prohibits any person from willfully committing the crime. *See* 26 U.S.C. § 7206(2). Fisher contends that the district court erred in admitting the expert testimony of Abalos because she testified as to Fisher's intent. The government argues that Abalos was testifying based upon her observations as a percipient fact witness and that her testimony fits within FED. R. EVID. 704(a).

However, what is damaging to the government's position is Abalos's testimony that: "These are my observations and my personal, professional opinion. I do believe that he knew [what he was doing was wrong]." Abalos thus told the jury that her assessment about Fisher's mental state was based on her expert opinion as a CPA. Abalos directly referred to Fisher's mental state. We agree with Fisher that the district court abused its discretion in admitting this testimony. *Cf. United States v. Ramirez-Velasquez*, 322 F.3d 868, 879 (5th Cir. 2003) ("The government goes too far in soliciting the functional equivalent of an opinion whether the defendant knew he was carrying drugs."); *Gutierrez-Farias*, 294 F.3d at 663; *see also United States v. Watson*, 260 F.3d 301, 309 (3d Cir. 2001) (explaining that Rule 704 is triggered when the expert "directly refer[s] to the defendant's intent, mental state, or mens rea").

**(2) Harmless Error**

An error is harmless if it did not influence the jury or had "but very slight effect." *Kotteakos v. United States*, 328 U.S. 750, 764 (1946); *see also United States v. Mendoza-Medina*, 346 F.3d 121, 127 (5th Cir. 2003) ("Unless there is a reasonable possibility that the improperly admitted evidence contributed to the conviction, reversal is not required." (internal quotation and alteration omitted)). While Abalos's testimony ran afoul of Rule 704, the error was harmless.

Evidence was adduced at trial establishing that Fisher: (1) backdated documents; (2) treated partnerships as having existed in the past when they did not; (3) treated the patient list of a doctor-client as a valuable intangible asset despite being told by the client that the patient list had no such value; (4) lied about his tax scheme's having been reviewed and approved by an accounting firm or the IRS; (5) lied to his clients about never having been audited by the IRS and lied about having

prevailed in audits; (6) filed tax returns that a client told him not to file; (7) falsely represented that he and his wife were also using the tax scheme; (8) prepared several amended returns at one time for a client, but filed the amended returns at different IRS service centers and over an extended period of time, in order to avoid attracting scrutiny from the IRS; (9) created W-2 forms that falsely represented that they were issued by the clients' employers and falsely claimed that the clients were so-called statutory employees; (10) challenged experienced tax professionals who questioned the tax scheme; and (11) responded to inquiries from an IRS agent with a letter that Fisher signed under another person's name, Johnny Washington, and impersonated Washington on the phone in discussions with the IRS agent.

Fisher maintained at trial that he believed what he was doing was right. Even so, the evidence demonstrates a pattern of misrepresentations—on tax forms, to clients, and to IRS agents—that could permit the jury to infer that Fisher wilfully committed unlawful acts. *Cf. Ramirez-Velasquez*, 322 F.3d at 879 (holding that, where other evidence is present to infer defendant's guilt, erroneous admission of Rule 704(b) evidence is harmless). Abalos permissibly testified that she observed that Fisher appeared concerned when she proposed his obtaining an IRS ruling. This testimony about Fisher's agitated state, coupled with testimony from others that Fisher vigorously challenged suggestions that his actions were not proper and with testimony about the repeated misrepresentations, provides a strong foundation for the jury to have inferred that he acted willfully in executing a fraudulent tax scheme. We hold that any error was harmless.

## B. Sufficiency of the evidence for false declaration before a court

Fisher moved for a judgment of acquittal at the close of evidence. *See* FED. R. CRIM. P. 29. A motion for a judgment of acquittal challenges the sufficiency of the evidence, and this court reviews

the denial of this motion de novo. *United States v. Medina*, 161 F.3d 867, 872 (5th Cir. 1998). In its review, this court considers "the evidence, all reasonable inferences drawn from it and all credibility determinations in the light most favorable to the Government, and affirm[s] if a reasonable jury could find the offense's essential elements beyond a reasonable doubt." *Id.*

In September 2003, the government filed a civil suit against Fisher, his wife, and various entities, seeking a permanent injunction and other relief. A permanent injunction was entered in January 2004; it not only prevented the defendants from promoting their tax scheme but also required the defendants to notify their clients about the injunction and to provide the government with a list of clients' names. In March 2004, the government moved to hold the defendants in contempt, alleging that they had not sent letters to the clients or provided the government with required documentation. The district court entered an order of civil contempt against Fisher and had him incarcerated.

In April 2004, the district court held a hearing on Fisher's motion for release, and Fisher testified. Two pertinent exchanges took place, the first on direct examination:

> Q: Since January 26th and the order of this injunction, have you given any tax advice?
>
> A: No. I'm not a tax preparer to give tax advice.
>
> Q: Well, that doesn't matter whether you are or not. But have you given any tax advice?
>
> A: No. Let me say this. I do investment banking, net equity transactions, and taxes are discussed, but I don't do the tax part. I leave that to the CPA or tax attorney. I leave that to the CPA or the tax attorney that's involved.

Fisher provided the following testimony on cross-examination by the government attorney:

> Q: So you sent a letter to Mr. Eames on that day. Who is Mr. Eames? One of your customers?

7

A: Yes, he uses our money matters.

Q: Apparently he's one of your tax clients as well?

A: I don't have any tax clients, Ms. Brown.

Q: Is it your testimony today that you do not have a single tax client?

A: Yes, ma'am, that's my testimony today.

Q:  It's your tax [sic] that you have never had a tax client?

A:  It's my testimony that I have never had a tax client personally, no, ma'am.

Q: Mr. Fisher, you had an office at 4341 Horizon North Parkway; isn't that correct?

A: Actually it was [court reporter missed words] something.

Q: You had offices in that physical space, correct?

A. Yes.

Q: That was the Magna Tax office?

A: Yes.

Q: Was that a tax company?

A: They provided tax and accounting services.

Q: And yet you were not in the tax business?

A: I didn't do any tax work for my clients.

At the conclusion of the hearing, the district court found that Fisher had not met his burden of proving he was no longer in contempt because his counsel acknowledged that one computer hard drive had still not been turned over to the government.  Based on Fisher's testimony at the hearing, the government charged in the instant case that Fisher knowingly gave false testimony, and the jury convicted him.

8

A person is criminally liable if, under oath in a proceeding before a court, he knowingly makes any false, material declaration. 18 U.S.C. § 1623(a); *see also United States v. Dudley*, 581 F.2d 1193, 1196 (5th Cir. 1978) ("To constitute perjury the statement must be false, material and made with knowledge of its falsity."). "A statement literally true constitutes no offense, and similarly, a false answer, if immaterial, is also inoffensive." *Id.* In *Bronston v. United States*, the Supreme Court held that a conviction is improper when the defendant's statement is literally true but unresponsive. 409 U.S. 352, 361 (1973). However, this court has clarified that "[i]f after conviction the defendant offers a contrived hypertechnical or lame interpretation of his answer, the jury's decision must be left undisturbed." *United States v. Brown*, 459 F.3d 509, 529 (5th Cir. 2006) (internal quotation omitted).

Fisher challenges the sufficiency of the evidence on two grounds. First, he claims that the evidence did not show that he knew the statements were false when he made them. Second, Fisher claims that the declarations were not material. The materiality of a statement under 18 U.S.C. § 1623 is a question of law reviewed de novo. *United States v. Salinas*, 923 F.2d 339, 340 (5th Cir. 1991).

**(1) Fisher's knowledge that the statements were false**

Fisher argues that his statements were "at worst literally true but unresponsive." He claims that the first set of questions were limited in scope to the period after January 26 and that the second set of questions were too imprecise regarding whether the question referred to Fisher or the entities affiliated with him. However, this court has stated that, when a defendant objects to questions as ambiguous, "the defendant's understanding of the question is a matter for the jury to decide." *United States v. Bell*, 623 F.2d 1132, 1136 (5th Cir. 1980). As a result, his argument that the unclear nature

9

of the questions posed to him rendered him unaware that he was making a false statement is unavailing.

Moreover, there were numerous instances during the trial when (1) a witness stated that Fisher told him (or her) that Fisher himself worked on the tax forms, (2) a witness observed Fisher working on tax preparation, and (3) a witness was read the excerpts from the April 2004 hearing and responded that Fisher's answers to the questions were false. From this testimony, drawing inferences in favor of the verdict, the jury could reasonably have concluded that Fisher knew his statements were false. Fisher's argument that the evidence was insufficient regarding his knowledge of the statements' falsity fails.

**(2) Materiality of statements**

The district court stated that the purpose of the April 2004 hearing was to afford Fisher "the opportunity of producing evidence that he has purged himself of the contempt previously found so that he should be released from custody." The indictment stated that the hearing was specifically held to determine whether Fisher was in a position to turn over to the United States the records in his possession or to which he had access.

Fisher contends that the statements at issue were not material because the district court sought only to establish that Fisher was in compliance with the injunction. He claims that any statements that he made about his actions prior to the date of the injunction were irrelevant. Fisher also states that the district court ruled that Fisher had not purged himself of contempt due to his attorney's statement about a hard drive that had not been turned over to the government; Fisher argues that the district court declined to consider any other evidence.

10

However, the "test for materiality is a broad one—whether the false testimony was capable of influencing the tribunal on the issue before it." *United States v. Giarratano*, 622 F.2d 153, 156 (5th Cir. 1980). This court has explained that "the false statement need not actually affect the tribunal's decision; it need only be capable of affecting the tribunal's decision." *Salinas*, 923 F.2d at 341; *see also Giarratano*, 622 F.2d at 156 n.7. Under this broad standard, Fisher's argument that the district court did not actually rely on his statement fails. The purpose of the hearing was to determine whether Fisher had turned over all documents to the government to which he had access. That Fisher may not have prepared any of the tax returns could have influenced the district court's assessment of whether Fisher reasonably had access to the documents. Fisher's statements were material, and there was sufficient evidence to support Fisher's conviction for making a false declaration before a court.

## C. Tax loss of $7 million

The jury returned a special finding that the actual and intended tax loss to the government was over $7 million. In support of this number at trial, the government had offered the testimony of an IRS special agent, a summary exhibit calculating the loss at over $10 million, and a 248-page back-up exhibit compiling the references in support of the $10 million figure. The jury's finding was used to calculate Fisher's sentence. *See* U.S.S.G. § 2T4.1(K) (establishing the base offense level in relation to the estimated tax loss). This court will overturn the district court's determination of tax loss for sentencing purposes only if there was clear error. *See United States v. Clark*, 139 F.3d 485, 490 (5th Cir. 1998).

At the sentencing hearing, defense counsel objected to use of the $7 million figure, contending that not all of it was attributable to fraudulent tax preparation. The district court overruled the

11

objection, citing the jury's special finding. Defense counsel then called IRS special agent Cathy Wiseman to testify. Wiseman told the court that she did not prepare the exhibits used at trial. Counsel questioned Wiseman about certain discrepancies in the numbers presented in the exhibits, attempting to cast doubt on the calculations. Wiseman testified that the numbers may have been "off slightly" but were "consistent" and that she believed the documentation supported a tax loss of $7 million.

On appeal, Fisher maintains that the documentation was unreliable and that the $7 million figure was unsupported. However, Fisher's reliance on Wiseman's testimony is misplaced. He falsely characterizes her testimony as stating that a tax loss of only $2.5 million was shown; instead, the record shows that she testified that the documentation proved losses over $7 million. Additionally, IRS revenue agent Joe Rosa testified at the hearing, explaining that, in at least some cases, the alleged discrepancies in the numbers were due to the numbers representing different items. Fisher has not shown that the district court clearly erred in using the $7 million figure in calculating his sentence.

**D. Imposition of $1 million fine**

Under U.S.S.G. § 5E1.2(a), the district court is directed to impose a fine "in all cases, except where the defendant establishes that he is unable to pay and is not likely to become able to pay." It is the defendant's burden to present evidence of inability to pay. *United States v. Tovias-Marroquin*, 218 F.3d 455, 458 (5th Cir. 2000). A defendant may rely on the presentence investigation report ("PSR") to demonstrate inability. *United States v. Landerman*, 167 F.3d 895, 899 (5th Cir. 1999). If the defendant comes forward with evidence of inability to pay, the district court may consider a range of evidence, including concealed assets, future earning potential, and the wealth of the defendant's family. *United States v. Fair*, 979 F.2d 1037, 1040 (5th Cir. 1992). Following *Booker*,

12

the district court's imposition of a fine is reviewed for reasonableness. *See United States v. LaGrou Distrib. Sys., Inc.*, 466 F.3d 585, 594 (7th Cir. 2006).

Fisher argues that the district court erred in imposing a fine and further erred in failing to cite reasons for imposing the fine. He makes two arguments in support: First, he cites to the section of the PSR that details his wife's financial position. Second, he points out that he was represented by appointed counsel at trial, demonstrating that he is indigent. However, as the government observes, Fisher overlooks other statements in the PSR. The PSR states that Fisher refused to submit a statement of net worth. And, the PSR notes that "the defendant frequently bragged to others that he had millions of dollars which were located in offshore bank accounts." The government goes on to explain that the IRS paid over $6.5 million in refunds to Fisher's clients and that Fisher typically retained 15% of a refund as a fee, with the result that Fisher realized approximately $1 million in fees. Finally, the government notes that, on the loan application to Wells Fargo Bank, the Fishers stated that they had $4 million in assets. Reading the PSR in its entirety and with the other evidence before the district court, the district court's determination that a $1 million fine was appropriate was not unreasonable.

## IV. CONCLUSION

The judgment of the district court is AFFIRMED.